| 23 | 205 |
| 91 | 642 |

THEODORE A. GOODWIN, plaintiff in error, *vs.* PLEASANT L. J. MAY, and others, defendants in error.

A. makes a conditional sale of personal property to B., and delivers possession. The agreement is, that the title is to remain in A. until the money is paid, and that A. has the right to re-possess himself of the property, if the price be not paid at the time stipulated. B. removes to another county, and carries with him the property. To secure a debt, he executes a mortgage upon the same. *Held,* That the title of it shall prevail, as against the mortgage lien.

In Equity, in Macon Superior Court. Decision by Judge POWERS. March Term, 1857.

This was a bill filed by Theodore A. Goodwin, against Pleasant L. J. May, Richard H. D. Sorrel, Jesse Cain, and

the Sheriff and deputy Sheriff of Macon county, for discovery, relief and injunction.

The bill set forth, that in May, 1852, complainant sold to Jesse Cain, a lot of furniture, consisting of beds, bedsteads, mattresses, tables, &c., on condition that the same was not to become the property of Cain until he paid for it, but that the right and title thereof was to continue in complainant until said payment.

That Cain agreed to pay complainant $623.37 for the furniture, a portion thereof in November, 1852, and the balance in January and April, 1853. Said sale was made in the city of Macon, and the furniture removed by Cain to the city of Oglethorpe, and placed in a hotel there which he had rented. That afterwards, in the latter part of the year 1852, Cain being very much indebted, executed to Pleasant L. J. May and Richard H. D. Sorrel, mortgages on his property, and included therein the furniture above mentioned. That at the time said mortgage was executed, Cain was very largely indebted to other persons, and this was well known to May and Sorrel.

The bill further charges that May and Sorrel, at the time they took the mortgages on said furniture, knew that it had only been conditionally sold to Cain, and that complainant claimed the same until his debt was paid, as per his agreement with Cain. That May and Sorrel have foreclosed their mortgages, and have levied upon said furniture, and the same is advertised to be sold by the Sheriff or deputy Sheriff of said county. The bill further alleges that May is greatly embarrassed and indebted, and complainant fears would not be able to respond to him for the value of said property.

The prayer of the bill is, that defendants be restrained and enjoined from selling said property, under their *fi. fas.*, and from intermeddling with the same, and for relief, &c.

May answered the bill, alleging that he leased the hotel in Oglethorpe, known as the Empire House, to Cain, for the

term of five years, at fifteen hundred dollars per annum, to be paid quarterly. That the mortgage executed to him by Cain was for the purpose of securing this debt. That Cain brought said furniture with him from Macon to Oglethorpe, and represented it to be his own, and defendant denies that he knew, or ever heard that the same belonged to complainant, or that he had any claim or title to the same. That his debt is just and *bona fide*, and that if such conditional sale was ever made, as that set up in the bill, it was concealed from defendant, and from the citizens of Oglethorpe.

Admits the foreclosure of the mortgage, and the levy upon the furniture, but denies all fraud, combination, &c.

Complainant filed a general replication.

Cain's answer was lost, but it was admitted and agreed that it fully sustained and corroborated all the charges and statements of the bill. Sorrel failed to answer, and the bill was taken *pro confesso* as to him.

The case came on to be heard, and the pleadings having been read, complainant introduced the depositions of *John G. Coleman*, who testified that complainant let Cain have some furniture, consisting of bedsteads, mattresses, tables, wash-stands, &c., all the articles in the schedule attached, and witness considered them worth the prices annexed, and amounting in the whole to $623.37 Complainant let Cain have the furniture with the understanding that the title should remain in complainant till Cain paid for it; it was not considered any one's property but complainant's till paid for. This contract was entered into before Cain took possession of the property. Witness was book-keeper for complainant, and was with the parties when the agreement was made. Cain carried the furniture to Oglethorpe to be used in a hotel there; does not know where it is now; dont know whether Cain ever paid complainant for it or not; knows nothing of Cain's circumstances or ability to pay for the furniture, but has always considered him totally insolvent; delivered the furniture to Cain, as agent for the complainant; the de-

livery was made at the Washington Hall, Macon, Georgia, and was after the contract; knows nothing more that would benefit complainant.

Here complainant closed.

Defendant introduced *Philip Cook*, who testified that at the time Cain executed the mortgage to May, he was not intoxicated, but sober. He brought this property with him to Oglethorpe long before he gave the mortgage, and claimed it as his own, and exercised acts of ownership over it from the time he came to Oglethorpe, obtaining credit upon the faith of it. At the time Cain leased the hotel from May, he said that he owned furniture sufficient to supply the house, and would consequently be able to pay May; he valued his furniture at $3500; never heard of complainant or any one else but Cain claiming or pretending to own said furniture. Cain had all his furniture insured, including this, and transferred his policy of insurance to May about the time he gave him the mortgage.

*T. W. Montfort* testified, that Cain claimed the furniture as his own; exercised acts of ownership over it, and obtained credit from some of the merchants upon the faith of being the owner, as he represented to them that he owned $2,500 to $3,500 worth of furniture, which he had insured at some $2,500, to guard against all hazard, and secure his creditors if he should get burnt out. He had been in possession of said furniture, claiming and exercising acts of ownership over it, from the time he moved to Oglethorpe, up to the time of executing the mortgage, which witness thinks was about twelve months.

Defendants introduced the mortgage and the notes, which were given to secure the judgment of foreclosure and *fi. fa.*; the mortgage dated 24th December, 1852, and the notes dated 17th April, 1852, and closed.

The presiding Judge, upon motion of defendants' solici-

tor, dismissed complainant's bill, upon the ground that he had not made out such a case as entitled him to a decree that a conditional sale existing in parol, was not good against creditors who had no notice thereof, at the time the credit was given.

To which decision complainant, by his counsel, excepted

GEO. W. FISH, and MILLER & HALL, for plaintiff in error.

HUNTER; COOK & MONTFORT, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The question in this case is this : A. sells personal property to B., and delivers it with the express understanding and agreement that if the same be not paid for at the time stipulated, A. is to repossess himself of the property, and that he is to retain the title until the money is paid. B. removes to another county, and mortgages the property to a creditor, who has no notice of the conditional sale. Who has the better right ?

There is but one ground upon which the lien of the mortgagee can be maintained, as against the legal title; and that is, constructive fraud or gross negligence ; which, in effect, implies fraud. Indeed, the rule is, that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud. And it is not every degree of negligence which will amount to a constructive fraud. It must be gross.

Here it is not pretended that there was either actual fraud or concealment as to the title of this property. What negligence was there? There is nothing in the fact that the contract was not reduced to writing and recorded. Neither of these things were necessary and the doing of both would not have altered the law of the case one whit. To hold, therefore, that the vendor should lose his property, under the facts of this case, would put an end to all loans, most bail-

ments, and break up altogether the transfer and removal of personal property from one place to another, unless accompanied by the actual owner.

It is true that possession is *prima facie* evidence of title to personal property. Judge Blackstone says it is of real. Still, if A. hire or borrow a horse to ride or drive to a neighboring village, and B. buy him, he cannot expect to hold the horse against my title. How can Mr. May any more expect to assert his mortgage lien on this furniture, as against Goodwin, the true owner? Shall it be said that Cain acquired credit on account of his possession of this furniture, and that Goodwin enabled him to obtain this credit, and that of two innocent persons, he that puts it in the power of another to commit the wrong, must be the sufferer? Did not A., in the case supposed, procure credit upon the possession of my horse, and did not I enable him to do so? Why, then, upon this course of reasoning, should not B., who has paid the full value for the horse, hold him?

This doctrine is unsustained and unsustainable. Possession may be *prima facie* proof of title, still, in law, it is no more than that. And whether it be land, or negroes, or horses, or household furniture, *caveat emptor* is the doctrine as to the true owner; and we must examine into titles before we purchase property or give credit, or take the conseqences.

                                 Judgment reversed.