FLANDERS & HUGUENIN, plaintiffs in error, *vs.* WILLIAM T. MAYNARD, defendant in error.

[JACKSON, Judge, having been of counsel in cases involving the same questions, and now pending, did not preside.]

1. Matters of fact in the motion for new trial are sufficiently verified by a direct statement in the record, signed by the judge, seeming to have that object, though expressed in terms somewhat loose and difficult of construction.

2. A sale, though nominally for cash, may become complete by adopting in the settlement an agreed substitute for money, if the parties really intend to pass title at once.

3. Where there is a contract for the sale of cotton, nominally for cash, but, on settlement, the price is entered as a deposit to the credit of the seller with the purchasers as bankers, the seller retaining a bank passbook as evidence, (the cotton being in a neighboring ware-house, and

nothing being said as to delivery,) the transaction, in its ultimate form, is, *prima facie*, either a loan of the value of the cotton, treating it as virtually paid for in cash, or a sale on the credit of the bankers, instead of a cash sale as originally contemplated.

4. Intention to dispense with actual delivery may be inferred from circumstances. When the parties consider the sale complete in respect to both price and delivery, the title passes. When, on the other hand, they intend that final payment and final delivery shall yet take place and be concurrent acts, the title does not pass.

5. Delivery, actual or constructive, under an express stipulation for retaining title till the price shall be paid, is but a conditional sale; and it preserves that character, in respect even to a subsequent *bona fide* purchaser, for value and without notice.

6. Where the delivery is of cotton etc., by a planter or commission merchant, "on cash sale," no express stipulation for the retention of title is necessary. By virtue of the statute, Code, section 1593, the title of the seller remains undivested until payment is received in full. The incidents follow, in respect to *bona fide* purchasers, which attend other conditional sales.

7. A conversation otherwise irrelevant to a given contract, may become relevant by having been recited between the parties while the negotiations were in progress.

8. Declarations by a person under whom the defendants claim, made whilst he was out of possession, and after the defendants parted with their money and acquired possession, are not admissible to impair their title.

Practice in the Supreme Court. New trial. Sales. Delivery. Evidence. Before Judge HILL. Bibb Superior Court. April Adjourned Term, 1876.

Maynard brought trover against Flanders & Huguenin for twenty-one bales of cotton. The general issue was pleaded. The evidence presented, in substance, the facts set forth in the third division of the opinion. The cotton was sold by plaintiff to H. G. Bean & Company, at Forsyth, on March 8, 1875, for $1,451.53. Whether it was understood between the parties that the title was not to pass until the money was actually paid, the testimoney was conflicting. Whilst the transaction was termed a cash sale, yet credit seems to have been extended. Bean & Company sold to A. H. Sneed, and he consigned to the defendants, factors in Macon. Whether the sale to Sneed was before or after shipment, the evidence

was conflicting, but the consignment was in his name.   De-
fendants advanced a considerable amount before they dis-
covered that there was any controversy about it.   Whilst
the cotton was in their possession, after the advance, plaintiff
demanded it and they refused to deliver.   They subsequently
sold it.   The firm of W. L. Lampkin & Company, at For-
syth, was composed of the same members as the firm of H.
G. Bean & Company.   Lampkin & Company was engaged
in the banking business; Bean & Company in buying and
selling cotton.   Plaintiff never has been paid for his cotton.
Lampkin & Company and Bean & Company were insolvent
at the time of the sale, though the fact was not generally
known.   The banking firm suspended payment on the 20th
of March.   To within a few days of this date, plaintiff could
have drawn out the money deposited to his credit for the
cotton, had he checked on it.

In answer to the second direct interrogatory, plaintiff
testified that about April 15th, 1875, B. Pye & Son, brokers,
of Forsyth, proposed to purchase his cotton; that he priced
it to them at about $14\frac{1}{2}$ cents per pound; that they sent to
the warehouse and obtained samples; that they determined
to purchase at the above price if plaintiff would let them
ship it and get a return of sales before paying for it; that
he declined to do this, telling them that he would not sell
his cotton to any one on time; that if business had reached
such a condition that cotton would not bring cash, he would
quit business; that they insisted, and plaintiff still refused,
but consented that they might ship the samples to Savannah
to ascertain what they could do there.

He further testified, that in the negotiations with Bean
& Company, which led to the sale to them, he repeated this
entire conversation had with the Pyes.

This conversation was objected to by the defendants, but
was admitted by the court.

The plaintiff further testified, that on the evening of
March 24th, 1875, after his return from Macon, where he
had been to demand the cotton from the defendants, after

the cotton had been advanced upon, he went with W. D. Stone, Esq., to see H. G. Bean, and found him sick in bed; that after the usual compliments, plaintiff remarked that he had been to Macon and found his cotton, and wished Bean to give him a written order to Huguenin & Flanders to turn it over to him; that Bean said, "Mr. Maynard, I would like very much to do so. I want you to get your cotton, and I hope you will get it, but as Sneed has drawn a draft on Huguenin & Flanders for $500.00, and given it to me, I do not see how I can give the order, but will see Mr. Lampkin in the morning and let you know whether I can give you the order or not." That he did not see Bean in several days, and then he said nothing in reference to the order.

Mr. Stone testified, in reference to this conversation, that Bean said: "I am glad you have found it (the cotton), and hope you will get it, but I doubt your ability to do so, as Mr. Sneed has drawn $300.00 on it; but Mr. Lampkin is the money man, and I will see him in the morning and let you know about it." That he, Bean, said, in substance, when asked by plaintiff how his cotton came to be shipped in Mr. Sneed's name, "I will tell you the whole matter in a nut-shell; to save expense of drayage, etc., I thought I would let Sneed go down and sell it at the railroad. Sneed concluded to get the benefit of the rise, and I allowed him to store it." That witness made a note of this conversation, and has quoted Bean, in substance, correctly.

To this testimony of plaintiff and of Stone, the defendants objected, but it was nevertheless admitted.

The jury found for the plaintiff $1,451.93. The defendants moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in refusing to charge as follows: "If you believe, from the evidence, that Maynard accepted the entry in the book as payment, then it was a good payment."

2d. Because the court erred in refusing to charge as follows: "The question whether or not the sale of the cotton by Maynard to Bean & Company was for cash or credit, is a fact that it is the duty of the jury to determine, and if you believe, from the evidence, that credit was given by Maynard to Bean & Company, you should find for the defendants."

3d. Because the court erred in refusing to charge as follows: "If you believe, from the evidence, that Maynard left the proceeds of sale of cotton sued for with the banking house of W. L. Lampkin & Company, the question whether or not he left said sum, depositing it as a payment for said cotton, is for you to determine, and if you believe he so left it, you should find for the defendants."

4th. Because the court erred in charging as follows: "It takes a payment and delivery to pass title. It takes something to make a delivery; there may be an actual delivery; or a bill of sale, or a warehouse receipt is a good delivery. A written bill of sale, or a written warehouse receipt, is a good delivery. A written bill of sale, or written transfer of the warehouse receipt, will make a good delivery, or there may be a contract between the parties dispensing with delivery. Therefore, if you believe, from the evidence, there was no delivery or agreement to dispense therewith, you may stop right there, whether the entry was a payment or not."

5th. Because the court erred in charging as follows: "If a trade was agreed on by Maynard with Bean as to the price of said cotton, and a calculation made as to the amount said cotton came to, and said sum was entered in a pass-book, without more, by the said Bean for the said Maynard, said entry so made was in payment."

6th. Because the court erred in charging the jury as follows: "If Maynard sold the cotton for cash, saying afterwards he would wait a few days for the money, that would not be a payment, and it would not pass the title."

7th. Because the verdict of the jury was contrary to law and the evidence.

8th. Because the court erred in not ruling out the conversation between Maynard and B. Pye & Son.

9th. Because the court erred in allowing Maynard and Stone to testify to a conversation had with Bean on the 24th of March, and to give in evidence Bean's statement to them.

The only verification of the grounds of the motion for a new trial, was as follows:

"The above and foregoing objections to the charge of the court and statement of the evidence, are true, and contain a correct record of the same. This July 3d, 1876.
(Signed) B. Hill, J. S. C. M. C.

The motion was overruled, and the defendants excepted.

When the case was called, counsel for defendant in error moved to exclude from the consideration of this court, all the grounds of new trial based on alleged errors in the charge, and on the admission of alleged illegal testimony. This motion was overruled, as will appear in the opinion.

John P. Fort; Wooten & Simmons, for plaintiffs in error.

John C. Rutherford; W. D. Stone, for defendant.

Bleckley, Judge.

1. Where some of the grounds of the motion for new trial are, that certain charges were given, that certain requests to charge were refused, and that certain evidence was admitted over the movant's objection, the truth of the matters alleged in these grounds is sufficiently verified by a direct statement in the record, signed by the judge, declaring that "the above and foregoing objections to the charge of the court, and statement of the evidence, are true, and contain a correct record of the same." Although the phraseology of this statement is peculiar and its construction difficult, yet, as there is every probability that it was intended to be a verification, and as this court cannot conjecture what else it was designed for, or discover in it any

other sensible meaning, there is less violence in accepting, than in rejecting it. The motion made here, by the defendant in error, at the opening of the argument, to exclude from consideration these grounds in the motion for new trial, is therefore overruled.

2. Though in negotiating for the sale of cotton, it be agreed that the sale is to be for cash, and cash only, whatever the parties, in closing the contract and making settlement, shall finally treat as the equivalent or representative of cash, will serve, *pro hac vice*, in lieu of money, if they really intend to conclude the sale presently and pass title at once.

3. Where a partnership, engaged in dealing in cotton under one firm name, and in banking under another, both at the same place, agrees with the owner to purchase from him, for cash, certain bales of cotton stored in a neighboring warehouse, the weights whereof are taken, and the samples of some examined, and of the balance dispensed with, the price per pound fixed, the calculation made, and the aggregate amount assented to by both parties; and where the seller, thereupon, producing his bank pass-book, in which he has an account with the partnership as banker, takes credit in said book for the aggregate value of the cotton, as for a sum then deposited by him in the bank, and after so doing departs satisfied, taking the book away with him, nothing being said touching a delivery of the cotton, (the warehouse receipts for the same being, at the time, in the hands of a clerk of the warehouseman with whom they had been previously left by the owner of the cotton, in anticipation of a sale to other parties,) the transaction, in its ultimate form, amounts, *prima facie*, either to a loan of the value of the cotton, treating it as virtually paid for in cash, or to a modification of the terms of sale by converting a nominal cash bargain into a bargain on the credit of the partnership as banker. The entry in the bank book is equivalent to a receipt for money: Morse on Banking, 48, 49; and is, consequently, evidence of a loan, and of a contract for repay-

ment on demand. It is sufficient to establish the relation of debtor and creditor between the parties; and, under the Code, §2244, it would be assignable so as to vest a right of action in the assignee in his own name. In order to recover upon it, there would be no occasion to allege or prove any sale of cotton, or any cause of action, whatever, beyond the indebtedness appearing on the book itself, the entry having been made by one of the partners, acting within the scope of the partnership business.

4. In a contract for the sale of cotton stored in a neighboring warehouse, both parties knowing it to be there, an intention to dispense with actual delivery may be inferred from circumstances, without any direct agreement; the circumstances including a settlement covering the whole price, and failure to stipulate anything concerning delivery. If the parties considered the sale complete in respect both to price and delivery, that is, that the buyers could take the cotton from the warehouse when they pleased, and the seller draw on them, as bankers, when he pleased, for the money specified in the entry upon the bank book, the title passed. On the other hand, if the true intention of the parties was, that, notwithstanding the entry upon the book, the cotton was to remain in the warehouse and under the control of the seller until the money should be actually paid to him or his order, or his agent—that is, that final delivery and final payment were to be concurrent acts, then title did not pass.

5. Though goods be delivered, if as a part of the contract under which delivery is made, they are, by express stipulation, to remain the property of the seller until paid for, there is but a conditional sale, or an executory agreement to sell; and the title of the seller cannot be defeated or impaired by a subsequent sale made without his consent to a *bona fide* purchaser, for value and without notice. Story on Sales, (edition of 1871), §§400, 457 *a*, 313, and notes; 40 N. Y. (Hand) 314; 2 Kent's Com. 493 to 498; 23 *Ga.* 205.

6. In the selling of cotton by a planter or commission

merchant, "on cash sale," the Code, §1593, renders the sale executory until payment is made in full; until then no title whatever passes out of the seller, and, consequently, even a *bona fide* purchaser for value and without notice, can get no right as against him. The case is not like that of title obtained by fraud, which is provided for in section 2640; the difference being that which exists between no title and voidable title. But only transactions "on cash sale" are thus qualified in the Code by implication of law, and protected.

7. A conversation which was otherwise irrelevant, became relevant by being repeated in the course of the negotiations which are now under scrutiny.

8. When the action is for a conversion of cotton, and when the defense proceeds on the theory that the plaintiff parted with title to a third person, and he to a fourth, by whom the cotton was consigned to the defendants as factors, and who received from them advances upon it to near its full value, declarations of this third person made to the plaintiff after the defendants acquired possession and advanced their money, and whilst said third person was out of possession, are not admissible in evidence for the plaintiff, even if said third and fourth persons were in collusion with each other, and if the transaction between them was merely colorable and designed to defraud the plaintiff, the defendants having acted without notice of any fraud.

Judgment reversed.