## EZZARD vs. FRICK & COMPANY.

1. Where personal property was sold under a contract by which the vendor should retain the title until the purchase money was paid, and without payment thereof, the purchaser re-sold to another, who appropriated it to his use, and refused to deliver it to the original vendor on demand, this was sufficient evidence of conversion.

2. The plaintiff in trover having elected to take damages in place of the property, could recover the value of the property in suit with hire.

3. Where a steam-engine was sold by the agent of the owners, title being reserved in them until the purchase money notes should be paid, and without paying them, the purchaser sold to a third person, against whom the vendors brought an action of trover, it was error to strike a plea to the effect that the defendant bought and paid for the engine without any notice of title in the plaintiffs, but that he had since learned that his vendor bought from the agent of the plaintiffs with the understanding that the title was to remain in them until fully paid for; that the purchaser failed to pay; that the agent of the plaintiffs, without making any effort to collect the

purchase money from him or out of the property, agreed with him that he might sell the engine and thereby raise the money to pay for it, provided he would pay to said agent five thousand dollars, out of money which he expected to receive from a certain trade, about to be made; that, failing to make the trade, he could not, carry out the contract with the agent, but in the meantime he had, sold to defendant, who had bought without notice of any incumbrance on the property, or of any defect in the title, or of the agreement between his vendor and the agent of the plaintiffs; and that this conduct operated as a fraud upon defendant, and estopped plaintiffs from recovering the property.

(*a.*) There also was error in rejecting evidence offered under such plea and pertinent thereto.

March 23, 1886.

Conversion. Title. Fraud. Estoppel. Trover. Before Judge HAMMOND. Fulton Superior Court. September Term, 1885.

Reported in the decision.

HENRY B. TOMPKINS, for plaintiff in error.

MYNATT & HOWELL, for defendants.

JACKSON, Chief Justice.

This is an action of trover brought by Frick & Company against William Ezzard for the recovery of an engine for sawing and ginning purposes. The plaintiffs elected to take the value of the engine and hire, and recovered nine hundred dollars. On the denial of a new trial, Judge Ezzard excepted, and the case is here to be reviewed on assignments of error on the several grounds of the motion for a new trial.

The machine was sold by Anderson, as agent for Frick & Company, to Wimpy, taking Wimpy's notes for purchase, except one hundred dollars, which Wimpy paid cash. In the notes, title was reserved to Frick & Company till Wimpy paid them, and Wimpy never paid them. Wimpy sold to Judge Ezzard, reserving title in

v 76-33

himself, till Ezzard paid him, which was done.    Thereupon Frick & Company sued Ezzard, as said above, and recovered by verdict nine hundred dollars.    Of course, in the absence of other facts, Ezzard only got Wimpy's title, which was no title at all until the engine was paid for, by the very terms of his contract with Frick & Company through their agent, Anderson.

1. There is no trouble about the proof of conversion. The engine was demanded and its restoration denied. Moreover the purchase of it from Wimpy and appropriation of it to Ezzard's use is conversion.    The sale by Wimpy to Ezzard is conversion in the latter.    *Sims vs. James*, 62 *Ga.*, 260.

2. Nor is there error in the instruction that the plaintiff, having elected to take damages in the place of the property, could recover the value of the engine with hire.    Code, §3057; 67 *Ga.*, 506, *Woods et al., ex'es, vs. McCall.*

3. The defendant, Ezzard, filed a plea to this effect: That he had bought and paid for the engine from Wimpy, without any notice of title in Frick & Company of any sort, but since learned that Wimpy bought from Anderson, as agent of Frick & Company, with the understanding that title was to remain in them till fully paid for; that Wimpy failed to pay; that Anderson, the agent, without making any effort to collect the purchase money from Wimpy or out of the property, agreed with Wimpy that he might sell the engine and thereby raise the money to pay for the same, provided he would pay him, the said Anderson, five thousand dollars out of money which Wimpy expected to receive from a certain trade about to be made ; and failing to consummate the trade, Wimpy could not carry out the contract with Anderson, but in the meantime had sold to defendant, who bought without notice of any encumbrance upon the property, and without notice from Anderson, the agent of Frick & Company, that Wimpy had no title, or that he and Wimpy had made the agreement about Wimpy's sale to defendant, and that this conduct operated as

a fraud upon defendant by plaintiffs through their agent, Anderson, and estops them from recovering from the defendant.

This plea was stricken and all evidence thereunder was ruled out, including the notes which Ezzard gave Wimpy, containing an express guaranty of right to pass title by Wimpy, and which made the contract between Wimpy and defendant. Error is assigned upon the striking this plea and ruling out the evidence to show its truth.

We are of the opinion that the court erred in striking the plea and ruling out the evidence pertinent thereto. If Anderson, who sold to Wimpy, as agent of Frick & Company, made this agreement with Wimpy for him to sell to Ezzard this property to raise money to pay for it, he being unable to do so, and did not notify Ezzard of it, but allowed him to think that he was buying a perfect title from Wimpy, and to pay Wimpy for it, after failing and neglecting to make the money out of it himself, if as the selling agent of Frick & Company, having guaranteed the notes to them too, in hope of realizing five thousand dollars from Wimpy's venture, he kept Ezzard in ignorance, concealed the truth from him, and suffered him thus to be fleeced, the facts make a case of fraud; and fraud of the agent, in a transaction of this sort appertaining to his agency, is fraud of the principal.

In *Goodwin vs. May et al.*, 23 *Ga.*, 205, on page 209, this court said, by Lumpkin, Chief Justice, " The question in this case is this, A. sells personal property to B., and delivers it with the express understanding and agreement that, if the same be not paid for at the time stipulated, A. is to re possess himself of the property, and that he is to retain the title until the money is paid. B. removes to another county, and mortgages the property to a creditor who has no notice of the conditional sale. Who has the better title ?

" There is but one ground upon which the lien of the mortgage can be maintained as against the legal title ; and

that is, constructive fraud or gross negligence, which in effect implies fraud. Indeed, the rule is, that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud."

In that case, the court held that there was not such gross negligence as to give the mortgage the better lien; but here, in this case, if the plea be true, there is actual fraud—fraudulent concealment of the truth from the man who is about to buy what the agent knows is no title.

Therefore, according to this dictum or ruling of Judge Lumpkin in *Goodwin vs. May et al.*, which is right upon the case then at issue, in that it distinguishes that case from the general rule, because there was no express, actual fraud or concealment, it is clear that such fraud and concealment as this plea sets up will give the innocent purchaser for value the better title than that of the principal who, through an agent, thus acts.

It is true that the agency of Anderson is restricted by some testimony in this record to making the sale. Camp was the general agent for several states, including Georgia; but no other agent was known to Wimpy, so far as this record shows, but Anderson. Wimpy dealt with him alone. He held the notes, at least some of them; he alone was accessible to Wimpy. According to his own testimony, they conferred about the sale, though Anderson, at the same time that he admits that, denies the contract set up in the plea; yet he held some of the notes at least, and was guarantor for all. At all events, we are clear that all the testimony should come out; and the question of agency in Anderson in respect to this trade and these notes, and the best mode to collect them and look after the property and save the debt, should also be fully investigated and be passed upon by the jury.

Certainly the defendant is an innocent purchaser without notice; he has been badly swindled by somebody; the agent's *laches*, or that of the principals, if they held part of the notes, allowed the property to slip out of Wimpy's

hands, when the money could have been made out of it, and allowed Ezzard to pay Wimpy without effort to stop him and get the money from him themselves, if they did not, through Anderson, their only Georgia agent, authorize the sale to Ezzard.

The whole affair should be ventilated and sifted, the Ezzard notes to Wimpy, and the entire transaction, go to the jury under charge of the court, and justice, according to law and equity, be administered.

Judgment reversed.