Mounger *vs.* Duke.

---

ELIZABETH J. MOUNGER, plaintiff in error, *vs.* MASTIN H. DUKE, administrator, defendant in error.

1. It is not necessary that an acceptance of a trust should be in writing. It may be done by acts as well as words. Code, section 2339.
2. Although the words of a deed or will may be such as do not create a separate estate in the wife, yet if the husband accept the appointment of trustee for his wife under order of the chancellor, and receives property as such, recognizes it as belonging to his wife, and admits that it

is hers during his life, the wife can maintain a bill against the legal representative of her husband after his death for such property, or for the property in which the same may have been invested by the husband.

3. In this case there was sufficient evidence that the husband, as trustee, received money from the former trustees of the wife, and of his investment of the same in the land in controversy, to entitle complainant to have had the case passed on by the jury.

Trusts. Husband and wife. Estoppel. Before Judge KIDDOO. Randolph Superior Court. May Term, 1874.

Elizabeth J. Mounger filed her bill against Mastin H. Duke, as administrator upon the estate of Edwin Mounger, deceased, making, in brief, the following case:

On December 1st, 1869, complainant, then Elizabeth J. Allen, and Edwin Mounger were married. Her husband was insolvent but she was possessed of a considerable estate, real and personal, for her life, remainder to her children. This property was conveyed by her father, William Ball, to her brothers, William G. Ball and James G. M. Ball, in trust for the sole and separate use of complainant during her life, remainder to her children. Some time in the year 1851 said trustees were removed and her said husband appointed in their place by the chancellor. Said trustee thus became possessed of property to the value of $10,000 00. With a part thereof, on March 1st, 1853, he purchased from one Daniel Rumph six hundred and seventeen and a half acres of land in Randolph county, at the price of $3,000 00, taking the title to himself individually. Subsequently, on November 17th, 1859, he purchased from Manning G. Stamper, with a portion of said trust estate, two hundred and two and a half acres of land in said county, taking the title to himself individually, for the sum of $1,000 00. On February 5th, 1861, said trustee, with James L. Ross, purchased from William Glover, as administrator of Joshua Pharaoh, deceased, lot of land two hundred and thirty-one, in the ninth district of Randolph county, containing two hundred and two and one-half acres, for the sum of $500 00. The title to the interest thus purchased by said trustee was taken to himself individ-

ually, though the trust funds aforesaid were again used in paying therefor. On April 10th, 1862, said trustee purchased, with the funds aforesaid, from James L. Ross, seventy-five acres of land for the sum of $500 00, taking the deed thereto in his own name. Said trustee thus expended $4,-750 00 of the funds of said estate in the purchase of nine hundred and ninety-seven and one-half acres of land, taking the title to the same in his own name. On December 13th, 1871, Edwin Mounger died, leaving little or no means whatever. Soon after his death complainant, for the first time, discovered that the title to the land aforesaid had been taken to him individually, and not as trustee. During his life he never made any claim to the same, but invariably referred to said property as belonging to complainant and her children. At the time of his death complainant was possessed of personalty, consisting of horses, mules, cows, hogs, household and kitchen furniture, to the value of $1,000 00, making an estate of $6,000 00 by including the realty aforesaid. At the October term, 1872, of the court of ordinary of Randolph county, the defendant, who married a daughter of complainant, was appointed the administrator of her deceased husband. Said administrator claims that the realty aforesaid, as well as said personalty, belongs to the estate of his intestate, and he intends to take possession of the same and to eject complainant. Waiving discovery, she prays as follows: 1st. That the defendant may be enjoined from interfering with the possession of complainant, of said realty and personalty. 2d. That said property may be decreed to be the sole and separate property of complainant during her natural life, with remainder to her children. 3d. That the writ of subpoena may issue.

The answer of the defendant denied that Edwin Mounger ever accepted said trust, or that he admitted that the property aforesaid had been purchased with trust funds; alleges that he always claimed said property as his own.

Upon the trial the complainant introduced the following evidence:

1st. Deed executed by William Ball, on July 25th, 1832, conveying to William B. Ball and James G. M. Ball three negroes, in trust for the benefit and use of his daughter, Elizabeth J. Allen, during her natural life, remainder to her children.

2d. Deed of similar character, between the same parties, bearing no date, and conveying one negro.

3d. Will of William Ball, in which the preceeding gifts are recited as "in trust for the said Elizabeth and the heirs of her body." It also directs, after disposing of certain property, that the remainder of his effects should be equally divided between his legatees. James G. M. Ball qualified as executor in March, 1837.

4th. Decree of the chancellor, passed at April term, 1851, of Randolph superior court, appointing Edwin Mounger as trustee for claimant in place of William B. Ball, removed from the state, and James G. M. Ball, resigned.

5th. The deeds referred to in the bill conveying certain lots of land in Randolph county to Edwin Mounger individually, alleged to have been paid for with the funds of the trust estate.

6th. Letter of date January 28th, 1851, from William B. Ball to Edwin Mounger, in which he objects to paying to the latter the trust funds in his hands until said Mounger shall have been appointed trustee.

7th. Letter of date October 20th, 1851, from the same to the same, in which the writer expresses himself "glad that the business has been arranged," and promises to send check for funds in his hands in December. He also stated that he "never felt safe in giving up the trust until some one was legally appointed to receive it."

The complainant then established by several witnesses that the lands in controversy were paid for with the proceeds of what was claimed to be the trust estate; that Edwin Mounger received into his hands funds from the former trustees; and that he, during his life, recognized that the property belonged to his wife and children.

Upon complainants announcing closed, the defendant moved for a non-suit upon the following grounds, to-wit:

1st. Because the words used by said William Ball in the two deeds to William B. Ball and James J. M. Ball, conveying the four negroes in trust for the use and benefit of complainant, did not create in her a trust and separate estate.

2d. Because the words used in said will of William Ball in making said gifts and bequests to complainant, did not create a separate and trust estate in her.

3d. Because the evidence submitted did not authorize a decree.

The motion was sustained and complainant excepted.

WORRILL & CHASTAIN, for plaintiff in error.

H. & I. L. FIELDER, for defendant.

TRIPPE, Judge.

1. Section 2339 of the Code enacts that an acceptance of a trust may be by acts as well as words, and that after acceptance no disclaimer will remove the character of trustee.

2. Although the words of a deed or will were not such as to constitute a separate estate in the wife, and under such words as were used, the husband could, before the act of 1866, have claimed title by virtue of his marital right, yet if he himself accepts the position of trustee, receives the property as trustee, treats it as such, acknowledging it to be trust property during his life, neither he, or his representative after his death, can deny the character in which the property was received by the husband. The principle involved in this point arose and was decided in the case of *Brown vs. Kimbrough et al.*, 51 *Georgia*, 35. The reasons are given in that case showing that an acceptance of a trust, or the creation of one, by the husband, operates upon the construction to be given to the conveyance, and words, which would not, where a third person is the grantor or trustee, create a separate estate in the wife's will, do so where the husband is the grantor, or does

himself accept the office of trustee, under a conveyance made by another.    That decision controls this point in this case, and we think there was error in sustaining the motion to dismiss on this ground.

3. We think the testimony as to the husband's having, as trustee, received money from a former trustee of his wife, and of his investment of the same, was sufficient to entitle the complainant to a hearing before the jury.    What the jury should have done we do not say.    But they should be allowed to determine the facts under the principles which should control the case, to be given them in charge by the court.

Judgment reversed.