# Kennedy *et als.*, Ex'rs, *v.* Winn *et al.*

*Bill in Equity against Personal Representatives of Deceased Trustee for Settlement of Trust.*

1. *Acceptance of trust is ordinarily presumed ; when may be inferred.* Acceptance of a trust, created by will, deed, or other instrument, is ordinarily presumed, and is not required to be in writing, nor manifested by express words, but may be inferred from interference with the trust property, or acts done in performance of the duties of the trust.

2. *Voluntary interference with trust property ; when regarded as acceptance of trust.*—Any voluntary interference with the trust property will be held an acceptance, unless it can be plainly referred to some other ground of action ; the *onus* being on the trustee to show this, and every doubt being resolved against him.

3. *Giving of receipt by trustee describing himself as such ; when indicating acceptance of trust—(this case.)*—Where a sum of money was bequeathed in trust, to be loaned out on bills of exchange or bonds secured by mortgage, the interest to be collected semi-annually by the trustee, and paid over to the beneficiaries ; and the administrator of the estate made an arrangement with a mercantile house, of which the trustee was a partner, to supply the beneficiaries with goods on credit, to be paid out of the semi-annual interest as it accrued, and paid the accounts every six months, taking receipts signed by the trustee as such ; *held,* that the giving of these receipts showed an acceptance of the trust, notwithstanding the accompanying declarations of the trustee that "he would not accept the general trust," and the fact that the administrator represented that he only wanted a proper receipt to use as a voucher on his settlement.

4. *Refusal of trustee to allow process for collection of decree rendered in his favor to be issued ; liability of trustee for loss caused by such action (this case.)*—On final settlement of the administrator's accounts, a decree was rendered against him, in favor of the trustee, for the amount of the trust, whereupon the trustee disavowed the authority to use his name, filed a protest in the Probate Court, and would not allow any process for the collection of the decree to be issued in his name ; *held,* on these facts, the money being lost by the failure to collect the decree, that the trustee was liable for the loss.

5. *Statute of limitations has no application, in cases of express trusts, between trustee and beneneficiaries.*—In cases of express trusts, the statute of limitations has no application as between the trustee and beneficiaries, and no length of time, short of the period of prescription, is a bar ; though there are exceptions to this rule, where there has been a settlement, or other final termination of the trust, or an open disavowal and repudiation brought home to the knowledge of the beneficiaries.

6. *Acceptance of trust ; when vacancy not created by subsequent disclaimer.*—In this case, the trustee having accepted the trust, his subsequent disclaimer did not create a vacancy in the office, nor authorize the appointment of another trustee ; and no loss occurred for two years afterwards. The trustee lived five years after the loss occurred ; and the bill was filed, asking the appointment of another trustee, and the

[Kennedy et als., Ex'rs, v. Winn et al.]

recovery of the trust fund, within two years after his death. *Held*, that though the complainants, who had only a life interest, might be barred by *laches* as to the accrued interest, their claim to the interest accruing in future was not barred, and the rights of the remainder-men were not affected by the delay.

APPEAL from Tuskaloosa Chancery Court.
Heard before Hon. THOMAS COBBS.

The bill in this case was filed on 22d November, 1882, by Sarah Francis Winn and Martha Stella Woods, daughter and grand-daughter, respectively, of Lucinda Perteet, deceased, against Edward N. C. Snow, William A. Leland and John R. Kennedy, executors of the last will and testament of Richard C. McLester, deceased. The purpose of the bill, and the facts disclosed by the record are sufficiently stated in the opinion.

VANHOOSE & POWELL, and WOOD & WOOD, for Appellants.

J. M. MARTIN, and McEACHIN & McEACHIN, *contra*.

CLOPTON, J.—A person, nominated trustee by deed, will, or other instrument, may, at his election, accept or disclaim. Though acceptance is necessary to constitute a trustee; when the trust is not raised by implication or construction of law, or is not coerced for the purpose of complete justice, as the result of the party's own conduct, or acts, its acceptance is not compulsory. No one, without his assent, will be constrained to undertake the duties, and incur the responsibility of a trust. Acceptance in writing, or by express words, is not essential. Ordinarily, it is presumed. There may be such interference, or acts done in the execution of the duties, as amount to constructive acceptance. Neither, when the trust property is a chattel interest, is it requisite that the disclaimer, to be effectual, should be in any formal mode. Absolute refusal to act, or parol disavowals, may be sufficient evidence. Each case must depend on the special facts, construed under the application of a few general rules. The complainants, not claiming an express acceptance, insist that the nominated trustee performed acts, which were in execution of the trust, and which bind him to an acceptance. And the defendants contend, that his parol declarations, contemporaneous with the performance of the acts, are tantamount to a disclaimer.

The following facts may be regarded as established by the evidence : Lucinda Perteet, by her will, bequeathed to Richard McLester, the testator of the defendants, in trust for the complainants, a sum of money consisting of gold and United States treasury-notes. The money was to be loaned on bills of

exchange, or bonds, secured by a mortgage on real estate, with the interest payable semi-annually, if practicable.  As the interest was collected, the trustee was to pay it to complainants, during their respective lives, in the proportions provided by the will.  The other provisions of the bequest are not material, as respects the questions involved in this aspect of the case.  The will was admitted to probate in November, 1870, and John S. Kennedy was appointed administrator of the estate.  Kennedy, with the consent of complainants, arranged with R. & J. McLester, a mercantile firm of which the nominated trustee was a member, to let the complainants have goods on a credit, and look to him for payment out of the semi-annual interest.  When the first payment was made, June 30, 1871, McLester, as trustee, gave Kennedy a receipt, which specified on its face, that the sum received was six months' interest on the money willed to Sarah Winn by her mother, Lucinda Perteet, and for which he was appointed trustee. Each six months thereafter, to January, 1874, receipts were given to Kennedy for the interest, signed by McLester as trustee for complainants.  When the first receipt was called for, McLester declined to sign it as trustee, saying that he had only agreed to let complainants have goods, and that payment therefor was to be made with the interest, and that he did not intend to accept the trust; but signed the receipt, on being assured by Kennedy, that what he wanted was a proper voucher on his settlement as administrator; that signing it as trustee would not bind him as such, without a formal acceptance; and that "he would not accept the general trust." In the first receipt, the word, *trustee*, is in McLester's handwriting.  The subsequent receipts were prepared, with the descriptive words written thereon, before carried to him to sign; and the evidence tends to show, that at the time of signing each succeeding receipt, he made the same declaration of an intention not to accept the trust.  In August, 1874, Kennedy made a final settlement of his administration, on which a decree was made in favor of McLester, as trustee, for the trust money in the hands of the administrator.  On being informed that such decree had been rendered, he disavowed the authority to use his name, and in August, 1876, filed in the Probate Court a protest, and refused to permit any process, for the collection of money, to be issued on the decree in his name.  When Kennedy, after the final settlement, offered him the notes of Baugh, Kennedy & Co., to whom money of the estate had been loaned, he refused to receive them, and refused to accept the trust.  This was the first time, as the witness states, he had made formal and positive refusal to accept the trust.  The question arising on these facts is, whether, under the circumstances, signing the receipts,

[Kennedy et als., Ex'rs, v. Winn et al.]

and receiving the interest, bound him to an acceptance, notwithstanding the cotemporaneous parol declaration, that he did not intend to accept?

In 1 Perry on Trusts, § 261, it is said: "The general rule is, that *every voluntary* interference with the trust property will stamp a person as an acting trustee, unless such *interference* can be *plainly* referred to some other ground of action than the acceptance of the trust." Any voluntary interference is, *prima facie*, an acceptance; and such interference having been shown, the *onus* is on the person appointed trustee to show, that it is clearly referable to some other ground of action. It is not a question, whether it is referable to an acceptance of the trust. It is presumptively so, unless shown to be otherwise. There must be no ambiguity in this respect. If it is a matter of doubt, whether the intention was to accept the trust, or to act in some other capacity, the doubt will be resolved against the trustee, and he will be held to have accepted the trust, and all its responsibilities. The policy of the law will not permit a person to place himself in a condition, in which he can say he is or is not trustee, as may subserve his personal interest.

It may be said, generally, that any acts, relating to the control, management, or disposition of the subject-matter of the trust, assertion of ownership, or execution of the duties of the trust, by a person, nominated trustee, with notice thereof, will be regarded an acceptance. "Any act by which the trustee manifests an intent to acquire or exercise any influence in the management of the trust property, will tend to fix upon him the responsibility of the trust." In *Conyngham v. Conyngham*, 1 Ves. 522, the appointed trustee was held to account, because of receiving the rents and profits, though he claimed, to have acted only as friend and agent. Lord HARDWICKE says: "It was incumbent upon him, if he would not have acted as trustee, to have refused, and not, going on in this ambiguous way, to leave himself at liberty to say he acts as trustee or not. Instead of this, he goes on receiving the produce; on this foundation he is directed to account." The execution of a deed, which contained no recital of a disclaimer, has been held of itself sufficient evidence, that the person who executed it, had accepted and acted in the trusts of the will, though the deed contained a recital, that it became unnecessary for them to act, and they never intermeddled in the trust; and made the deed, by request, to convey the legal estate vested in them by the will.— *Wich v. Walker*, 14 Eng. Ch. R. 702. If, however, the appointed trustee executed no other act, than a release of the legal estate, such deed of release containing a disclaimer, and the meaning and intent being to disclaim, no

[Kennedy et als., Ex'rs, v. Winn et al.]

inference of an acceptance of the trust will arise.—*Nicloson v. Wordsworth*, 2 Swan. 315.

Had nothing more been done, than merely to carry out the arrangement or agreement, under which R. & J. McLester let the complainants have goods, it would have been manifest, that such acts were done in the capacity of merchant and creditor, and could have been plainly referred to this ground of action. The case would then have fallen within the rule in *Stacey v. Elph*, 1 M. & K. 195; and the parol disavowal would have been evidence of non-acceptance of the trust. But the avowed purpose of Kennedy was to obtain a voucher, showing he had paid the money to the person, authorized by the will to receive the interest. Hence, he did not take the firm's receipt as in payment for the goods, but required McLester's individual receipt as trustee, leaving him to make the appropriation of the payment. If McLester did not intend to accept the trust, it was incumbent upon him to refuse to give such receipt. Instead of doing so, he executed a receipt as trustee, showing on its face, that it was given for the interest on the money bequeathed to him in trust for complainants, and that with a knowledge of his appointment, he proceeded in the execution of the duties of the trust. In receiving the interest, and in executing the receipt, he acted in the capacity of trustee, and in no other capacity. The receipt is an unequivocal admission, that he acted in the character, and by virtue of the power in the will. It can not be referred to any other ground of action.—*Doyle v. Blake*, 2 Ch. & Le. 229; *White v. Barton*, 18 Beav. 192; *Chaplin v. Givens*, Rice 132.

The next question is, whether receiving the interest semi-annually, for more than two years, and executing the several receipts as trustee, constitute such interference as will make him responsible for the loss sustained by his failure to collect the trust money, notwithstanding his parol declarations of an intention not to accept the trust, and the assurance on which the receipts were given? On the evidence, there can be no doubt, that the money was lost by his failure to collect it, and by his interference in preventing its collection. While we have no doubt that the assurances were made honestly and in good faith, the mistaken opinion of Kennedy, as to the legal effect, will not shield the trustee from the natural and necessary consequences of his unambiguous acts. It is evident, that McLester had an apprehension, that giving such receipt would bind him to an acceptance of the trust. The essence of the assurance was, in the language of the witness, "that he would not accept the general trust;" which we understand to mean the trust as to the *corpus* of the estate. On this assurance, either for the purpose of furnishing the administrator

[Kennedy et als., Ex'rs, v. Winn et al.]

with a proper voucher, or of receiving payment for the goods, or both, McLester modified his intention, and was willing to give the receipt; which, it is reasonable to infer, he supposed would not be an acceptance beyond the interest actually paid. If this be so, the error consisted in the opinion, that he could accept the trust partially, and renounce a part. His conduct in giving the several successive receipts, and his declarations, may be made consistent, by referring the declarations to an intention not to accept the trust as to the principal of the money. This construction fairly explains his conduct, and accords with the evidence, that he never positively and formally refused until the notes of Baugh, Kennedy & Co. were offered to him.

However this may be, the amenability of the trustee must be decided against the defendants on other principles. While we do not concur in the proposition, that the receipts are contracts in writing, not subject to be varied, explained, or contradicted by parol evidence; they are voluntary and deliberate admissions, with notice of the facts, of the trust nature of the funds, his appointment as trustee, and the reception of the money in his fiduciary character under the power conferred by the will. It is not claimed that there are in the receipts any misdescriptions, or inaccurate references to the money received; or that they were given in mistake of fact, or by surprise; or that they were obtained fraudulently, or by a concealment or misrepresentation of material facts. The effort is not to explain or contradict, but to show by parol evidence an intention different from the legal effect of the receipts. An oral declaration of an intention not to accept a trust, made contemporaneously, would not defeat an express acceptance in writing, unless shown to have been procured by fraud or surprise. The first receipt is, in legal effect and for legal purposes, the equivalent of an express acceptance, and an adverse parol declaration will not obviate the force and operation of the one, any more than of the other. It would be a dangerous precedent to permit an acceptance of a trust, resulting from the acts of the trustee, evidenced by writings signed by him, to be overridden by a disclaimer resting only in parol. The receipts were given with the knowledge, that they were to be used on the settlement of the administrator's accounts for the purpose of influencing the action of the court of probate, and to enable the administrator to obtain an allowance of the amounts of the receipts, as properly disbursed. They were to be preserved among the papers of the administration, in a public office, to which the complainants had the right of access. Had the interest been misapplied, and the trustee called to account, in a proper case, he would be estopped from denying, that he received the money in the capacity of trustee. Having

acted in his character of trustee, and having suffered himself to be represented in that character before the court having jurisdiction of the estate, and in judicial proceedings, he brought upon himself all the burdens and responsibilities of the trust, and is precluded to deny its acceptance. The court was justified, under such circumstances, in rendering a decree in his favor as trustee.—*Maccubbin v. Cromwell*, 7 G. & J. 157. Having once accepted the office, he could not, afterwards, by disclaimer or renunciation, avoid its duties and responsibilities. He could have been relieved, only by a special power in the appointing instrument, or by a court of equity, or in the summary manner provided by statute.—1 Perry on Trusts, §§ 168, 401; *Drane v. Gunter*, 19 Ala. 731; *Ward v. Lewis*, 4 Pick. 518.

The defendants further insist, that the claim of complainants is barred by their *laches*. The general rule is, that in cases of express trust, peculiarly cognizable in equity, the statute of limitations, as between trustee and *cestui que trust*, has no application; and no length of time, short of the period of prescription, is a bar. The general rule has its exceptions. If there has been a settlement, or other final termination of the trust, or an open disavowal and repudiation, brought to the knowledge, actual or constructive, of the *cestui que trust*, the statute of limitations is put in operation. The question, from what time does the statute commence to run, has most generally arisen in cases where, either the trustee has repudiated the trust and asserted a hostile claim to the property, or where there has been a settlement, and he is afterwards called to account for breaches of trust committed anterior thereto. The disavowal and repudiation, to be sufficient, must terminate the trust as a subsisting trust, and be brought to the knowledge of the *cestui que trust* in such manner that it is incumbent upon him to assert his equitable rights. In case of an accepted trust, passiveness or a failure to execute the duties, will not put the statute in operation.—*McCarthy v. McCarthy*, 74 Ala. 546; *Hovenden v. Anesly*, 2 Sch. & Lef. 693; *Baker v. Whiting*, 3 Simon, 475; Perry on Trusts, §§ 863, 864.

The exception, that an open denial or repudiation brings a direct and technical trust within the operation of the statute, ordinarily applies where the subject-matter is tangible property, of which the trustee may assume absolute ownership, requiring the *cestui que trust* to act as upon an asserted adverse title. But, generally, the statute of limitations can not be pleaded against a mere breach of trust.—*Botcher v. Allington*, 3 Atk. 452. And, when the *cestui que trust's* right of action is wholly founded on a breach of trust, the subject-matter having been lost or misapplied by the negligence or wrongful act

of the trustee, his mere denial of a previously accepted trust, or refusal to act further, unaccompanied by the assertion of an adverse title, does not bring the case within the exceptions to the general rule. Otherwise, no field remains for its operation, and it would be virtually abrogated.

A bar by the statute of limitations is not specially insisted on; but it is claimed, that the complainants have slept on their rights, and acquiesced in the conduct of the trustee for such length of time, and under such circumstances, that a court of equity, acting on its own peculiar doctrines, will not interfere to grant them relief. The bill is filed under and in pursuance of the ninth clause of the will, which provides, that in case of the decease of McLester, or his failure or refusal to undertake and discharge the trusts, another trustee shall be appointed by the chancellor of the district, on the application of complainants, or either of them; and in no event are the bequests to be paid to any person, other than the nominated trustee, or to one appointed as therein provided. The purposes of the bill are two-fold; the appointment of a trustee to execute the trust, and the recovery of the trust fund *to be turned over to him.* A vacancy in the office is preliminary to an application for the appointment of another trustee. The denial of a previously accepted trust, or the refusal to further act, does not of *itself* create such vacancy. Without the resignation or removal of the trustee, the substitution of another, during his life, is void. *Laches* can not be imputed to the complainant for a failure to apply for the appointment of another trustee during the life of McLester.

Though his declaration of a refusal to act as trustee was communicated to the complainants about December, 1874, he had not then committed a breach of the trust, on which to base a right of action. The final settlement of the administrator was made in September preceding. Having, as we hold, accepted the trust, it was his duty to have collected the money from the administrator. His conduct was passive in this respect, until August, 1876, when, by his active interference, the collection of the money was prevented. Until the bankruptcy of Baugh, Kennedy & Co. the loss or injury, occasioned by his failure to perform his duty, did not appear. These considerations, however, are only applicable to the extent of the interest which the trustee was required to pay to complainants. The case is not that of *cestuis que trust,* who have a right to recover to themselves from a trustee the damages sustained by the waste or loss of the *corpus* of the trust estate. Under no circumstances are the complainants entitled to recover and *receive* the principal; and such is not the object of the bill. Since the death of the trustee there has been no one authorized

[McDowell et al. v. Brantley et al.; Brantley et al. v. Burford, Adm'x.]

to collect the principal fund. Acquiescence of the complainants for any length of time, not even their sanction of the breach of trust, can bar the rights of the *cestuis que trust* in remainder, though it might operate to bar the right of complainants as to the accrued interest. The substituted trustee is not barred unless the *cestuis que trust* are themselves barred at the time of his appointment.

McLester died in January, 1881, and the bill was filed in November, 1882. If the complainants were barred as to the accrued interest, they still have an interest in the trust fund, respecting the income, that may hereafter accrue. Whether, therefore, the bill be regarded as filed by *cestuis que trust*, independently of the provisions of the will, or as filed under the authority and direction of the will, to obtain the appointment of a trustee, the court has power, and will proceed, to the end of complete justice, to recover and secure, in the same suit, the trust fund, to be turned over to the substituted trustee to execute the trust. Considered in either point of view, the bill is brought by proper parties, contains equity, and *laches*, sufficient to defeat its objects, are not imputable under the circumstances.—*Howard v. Gilbert.* 39 Ala. 726.

Affirmed.