FREEMAN, ordinary, for use, etc., *v.* BROWN, adm'r, *et al.*

1. Although upon hearing a demurrer the court "decided to sustain the same and dismiss plaintiff's petition, and dictated his decision to the court stenographer," and then discharged the jury that had been empaneled to try the case and "took up another case," yet if, "before the court stenographer completed transcribing the judgment of the court and before the court signed the same," an amendment to the petition was offered by the plaintiff, such amendment should not have been disallowed upon the ground that it was offered too late.

2. A bequest of one thousand dollars to a named person, "to be divided equally

between " his children by his first wife, nine in all, the person so named to take " one child's part, and each child to draw one hundred dollars, with interest, as it comes of age, from the date of " the testator's death, is as to one tenth of the legacy a direct bequest to the person so named, and as to the other nine tenths a bequest to him in trust for the children ; and the acceptance of the trust charges him with the duty of making and paying over to the children interest on their respective portions as they become entitled to receive the same.

3. Where such a legatee, upon the death of the testator, became administrator with the will annexed upon his estate, the beneficiaries of the portion of the legacy to which the trust attached can not, after the decease of such administrator, maintain an action against his estate and the sureties upon his administration bond, based on the theory that a separate legacy of one hundred dollars was bequeathed to each of them, which it was the duty of the administrator with the will annexed to retain possession of until the legatee entitled thereto became of age, and then to pay the same, with interest thereon from the date of the testator's death, to such legatee.

4. Where one appointed trustee, with notice of the trust, voluntarily undertakes to discharge duties devolving upon the trustee, and interferes with the trust fund in such a manner and to such an extent as that his interference therewith can not be plainly referred to some other ground of action, he will be conclusively presumed to have accepted the trust.

5. Where a petition alleges that one, to whom a legacy such as that described in the second headnote was bequeathed, became, upon the death of the testator, the administrator with the will annexed upon his estate, and subsequently paid to himself the portion of the legacy bequeathed to him in his own right, and thereafter, " from time to time, made payments out of said legacy " to the cestuis que trust interested in the remaining portion thereof, and "partially administered said legacy," it shows that the sum constituting the legacy has been severed by him from the other assets of the estate and has passed from him as administrator to him as legatee and trustee, and that his liability therefor as administrator has terminated.

Argued October 9, 1901.—Decided March 31, 1902.

Action on administrator's bond.    Before Judge Estes.    White superior court.    April 11, 1901.

*I. L. Oakes* and *J. J. Kimsey,* for plaintiff.    The proposed amendment was in time : Civil Code, § 5097 ; 81 *Ga.* 226 ; 86 *Ga.* 21 (1) ; 92 *Ga.* 706 ; 102 *Ga.* 815.    The legacy is to the father and the children in common, the children's shares to be paid to them by the administrator as they come of age : 98 *Ga.* 385(1) ; 43 *Ga.* 327 ; 56 *Ga.* 9 ; 74 *Ga.* 467 ; 80 *Ga.* 385 ; 82 *Ga.* 608 ; 86 *Ga.* 709 ; 95 *Ga.* 782 ; 110 *Ga.* 614, 708 ; 3 Jarm. Wills (ed. 1881), 174, 180 ; Page, Wills, §§ 522, 567 ; 29 Am. & Eng. Enc. L. (1st ed.) 439, 508 ; 2 Wms. Exrs. (ed. 1895) 340, 344, 352.    Rule in Wild's case : 110 *Ga.* 370(1) ; 12 *Ga.* 357, 360.    Gift to class : 98 *Ga.* 320 ; 30 *Ga.* 976 ; 80 *Ga.* 673 ; 82 *Ga.* 213 ; 25 *Ga.* 549.    No

trust created, either expressly or by implication. The only trust created was such as the administrator could carry out as such; and he, having accepted the fund in that capacity, would be bound on his bond to pay it out as such, without the intervention of a trustee. As to precatory words which will create a trust: Civil Code, § 3162; Page, Wills, §§ 611, 612; 1 Jarm. Wills, *387; 1 Perry, Trusts, § 112; 44 Am. Dec. 377, note; 27 Am. & Eng. Enc. L. (1st ed.) 40.

*J. W. H. Underwood* and *H. H. Dean*, for defendants.

FISH, J.　J. H. Freeman, ordinary of White county, brought suit, in the superior court of that county, for the use of James Thurmond and others, "children of E. J. Thurmond and his wife Mary," against S. L. Brown, administrator of E. J. Thurmond, deceased, and E. J. Houston and others, as sureties upon the bond of E. J. Thurmond, as administrator with the will annexed of John Glen, deceased. The suit was brought to recover the several amounts alleged to be due the respective usees of the plaintiff, as legatees under the will of John Glen. The petition alleged that E. J. Thurmond, as administrator with the will annexed of Glen, had received into his hands ample assets of the estate of such testator, over and above the amount necessary to pay the debts and the costs of administration, to pay the amounts due upon the legacies of the usees, and that he and Brown, the administrator upon his estate, had each failed and refused to pay such legacies. A copy of the will of Glen and a copy of the bond of E. J. Thurmond, as administrator with the will annexed of Glen's estate, were attached to the petition as exhibits. In the will the testator disposed of his estate as follows : " To E. J. Thurmond I will one thousand dollars to be divided equally between the children of E. J. Thurmond and his wife Mary, being nine in all, E. J. Thurmond one child's part, and each child to draw one hundred dollars, with interest as it comes of age, from the date of my death. Also I will to Caroline Hix four hundred dollars for the use of her and her children." The defendants demurred to the petition. The bill of exceptions recites that, " Upon hearing argument on said demurrer and considering the same, the court decided to sustain the same and dismiss the plaintiff's petition, and dictated his decision to the court stenographer." Then follows the decision of the court, embodied in a written opinion, in which the court, in effect, held that as the testator

bequeathed one thousand dollars to E. J. Thurmond, nine hundred dollars of which amount was bequeathed to him in trust for his nine children mentioned in the will, and Thurmond, upon the death of the testator, having become administrator with the will annexed upon the testator's estate, so soon as he as such administrator came into possession of funds from which this legacy of one thousand dollars could be lawfully paid, eo instanti the portion thereof which he was to receive in trust for his children passed, by mere operation of law, from him as administrator to him as trustee, and his liability therefor as administrator terminated. The bill of exceptions also recites that, "Before the court stenographer had finished transcribing the said decision of the court on the demurrer, and before said decision was signed by the court, counsel for plaintiff presented the following amendment to his petition:" and then sets forth the amendment. "The court refused to allow said amendment, and in rejecting it passed the following order: 'This proposed amendment is refused. After the jury was chosen and after argument on the demurrer, the court dismissed the case on the demurrer and dictated the decision to the court stenographer, and discharged the jury and took up another case. Before the court stenographer completed transcribing the judgment of the court and before the court signed the same, this amendment was presented; and the court being of opinion that it was offered too late, and also is not germane to the case and is insufficient in law, the same is overruled.'" "The court then signed the two orders, first the one disallowing the proposed amendment, and then the one sustaining the demurrer to the plaintiff's petition." To each of these rulings the plaintiff excepted.

1. The first question with which we have to deal is one of practice. Was the amendment which the court refused to allow offered too late? Under the Civil Code, § 5097, a plaintiff has the right to amend his petition "at any stage of the cause, whether in matter of form or substance, provided there is enough in the pleadings to amend by." If, therefore, this proposed amendment was offered at a stage of the cause, it was in time. It was offered at a stage of the cause, unless the cause was then out of court. We are clearly of opinion that the case was still pending in court. Its dismissal was impending and imminent, but had not taken place. The judge had determined to sustain the demurrer and dismiss the case,

had dictated the matter which was to form the judgment of dismissal to the court stenographer, and that official was preparing the same for the judge's signature; but before he had completed his task and, of course, before the judge had signed the judgment, the amendment was offered. There was at that time nothing which was in condition to go upon the records of the court. The oral announcement of the judge was no judgment, neither were the shorthand notes of the stenographer of the matter and language of this oral announcement the judgment of the court, and certainly the uncompleted transcription of these notes into longhand was no judgment. What the judge orally declares is no judgment until it has been put in writing and entered as such. The decision in *Lytle* v. *DeVaughn*, 81 *Ga.* 226, which was an illegality case, is directly in point. There it was held: "The motion to amend is in time if made before any order or judgment dismissing the illegality has been entered, although the court has orally announced that the motion to dismiss is sustained." In that case the plaintiff moved to dismiss the illegality, upon the ground that the bond given by the defendant did not comply with the statute. "The court announced that the motion was sustained, but, before any entry thereof was made, defendant moved for leave to amend the bond so as to make it comply with the statute, which amendment he was ready and prepared to make. This amendment was refused, and an order granted dismissing the illegality." In the opinion Chief Justice Bleckley said: "That announcement [the announcement by the court that the motion to dismiss was sustained], the court being one of record, did not terminate the case; it remained pending in court to await the preparation and entry of the final order or judgment. By analogy to the rule for amending pleadings (Code, § 3470), the bond was amendable 'at any stage of the cause, and when the offer was made to amend, the cause was in a stage, though certainly the last stage of its existence. It was about to expire, but was not dead.'" See also *Bowe* v. *Gress Lumber Co.*, 86 *Ga.* 21. The amendment was germane. It did not set up a new cause of action. Its sufficiency to cure the defect in the petition was a question not to be passed upon in determining whether or not it should be allowed, but in determining, after its allowance, whether the petition, as amended, was sufficient to withstand the pending demurrer. Still if the petition, with this amendment incorporated into it, would have been

subject to the objection raised by the demurrer, the disallowance of the amendment was a harmless error.

2, 3. The petition, as it stood when this rejected amendment was offered and disallowed, was subject to the demurrer which the defendants urged thereto, because it did not set forth a cause of action. It was based upon a wrong construction of the will. That construction, as expressed in the allegations of the petition, was as follows: "That the will of said John Glen, deceased, gives to each one of petitioner's usees the sum of one hundred dollars with interest thereon from the date of the death of John Glen, deceased, which occurred on the     day of     1878. And that said legacies were to be paid to your petitioner's usees upon their obtaining their majority, with interest as aforesaid." Consequently, the allegation that Thurmond, as administrator with the will annexed of Glen's estate, had failed and refused "to pay out the legacies under said will due your petitioner for his said usees, as he was bound in law to do," is equivalent only to an allegation that the administrator had failed and refused to pay out to the plaintiff's usees the amount of these so-called legacies. Such an allegation of fact is not at all inconsistent with a payment by the administrator of the entire one-thousand-dollar legacy to E. J. Thurmond, the individual, to whom, as we shall presently undertake to demonstrate, the whole legacy was payable under the terms of the will, to be when received by him subject to the trust therein indicated. The allegation that the will gave to each of the plaintiff's usees a legacy of one hundred dollars, with interest thereon from the date of the death of the testator, and that "said legacies were to be paid to your petitioner's usees upon their obtaining their majority, with interest as aforesaid," shows that the plaintiff was seeking to hold the administrator liable for the non-payment to the legatees themselves of legacies, each of which he was bound to hold until the respective legatee reached the age of twenty-one years, and then to pay the same to such legatee, with interest thereon from the date of the death of the testator. If this were a proper construction of the will, the defendants in this case could not prevent a recovery by the plaintiff, even if they showed that Thurmond, as administrator, had paid to himself, as legatee and trustee for his nine children mentioned in the will, the entire legacy of one thousand dollars. Such a defense would be no answer to a claim, rightly founded, that each of these children was

given a separate legacy of one hundred dollars, which the administrator was bound to hold until such child reached majority and then pay the same to such legatee, with interest thereon from the testator's death. If the theory of the petition were correct, the administrator had no right whatever to pay any part of the one thousand dollars bequeathed in the item of the will under consideration to Thurmond the individual, except the one hundred dollars thereof which was bequeathed to him in his own right. This is the contention of the plaintiff in error in this court, as shown by his specific assignments of error upon the judgment sustaining the demurrer, and by the argument of his counsel here. Each of the five specific assignments of error upon this judgment presents this contention, though the form in which it is presented varies. Thus it is alleged that the judgment was erroneous, because the will did not create in E. J. Thurmond a trust for his children, but on the death of the testator nine tenths of the one thousand dollars vested in the children absolutely, free from any trust; because the whole duty in reference to the interests of the children was cast by the will upon the representative of Glen's estate; because the turning over by the administrator to Thurmond, individually, of the whole of the one thousand dollars would not execute the will and discharge the sureties upon the administration bond, etc. These assignments of error and the argument of counsel for plaintiff in error show that the construction which we have placed upon the original petition is the one intended by the pleader who drew it.

The will does not give separate legacies to each of the nine children, but it gives one entire legacy of one thousand dollars to E. J. Thurmond, one hundred dollars of which he is to take for himself and the remaining nine hundred dollars of which he is to receive in trust for these children, and to pay to each child, upon such child arriving at the age of twenty-one years, one hundred dollars with interest thereon from the testator's death. No "legacies" were to be paid by the administrator to the plaintiff's usees, "upon their obtaining their majority," but one legacy of one thousand dollars was to be paid by the administrator to E. J. Thurmond, nine hundred dollars of which he was to receive as trustee for his children, and he, not the administrator, was to pay the so-called "legacies" to his children as they, respectively, attained the age of twenty-one years. It requires but little argument to show that this is the proper construction of the

will. The testator made no direct bequest to Thurmond's children. The bequest begins with the following words: "To E. J. Thurmond I will one thousand dollars," — and had it stopped there, it could not be doubted that it was a direct bequest to Thurmond, and he would be entitled, in his own right, to the entire sum mentioned. The language of the bequest which follows that just quoted merely shows the purpose for which, and the intention with which, the testator willed one thousand dollars to Thurmond; it does not alter the fact that the sum of one thousand dollars *is willed* to E. J. Thurmond, but simply shows that of this sum bequeathed to him he is to have one hundred dollars and to hold the remaining nine hundred in trust for his nine children, and to distribute the same among them as they, respectively, become of age, as the will directs. The entire one thousand dollars was bequeathed to Thurmond, with such directions as to its disposition as necessarily constituted him trustee for the minor beneficiaries who were to share with him in the legacy. The plaintiff, as we have said, sought to recover upon a wrong theory — one which would have rendered the sureties upon Thurmond's bond as administrator liable, even though he, as administrator, had complied with the will by paying to himself, as legatee, the entire legacy. Consequently the petition set forth no cause of action. If, instead of alleging, in effect, that separate legacies were bequeathed to each of the plaintiff's usees, which the administrator was bound to pay to them as they, respectively, arrived at age, the petition had alleged, either directly or substantially, that nine hundred dollars of the sum bequeathed to E. J. Thurmond was given to him in trust for the plaintiff's usees, and that he, as administrator with the will annexed, had never transferred this trust fund from himself in that capacity to himself as trustee, it would not have been subject to the demurrer, so far at least as the usees who were alleged to be sui juris were concerned. For, under such circumstances, they would be entitled to demand of and receive from the administrator, or, he being dead, from the representative upon his estate, whatever was due them under the terms of the will.

4, 5. The amendment which the court disallowed was, as we have seen, offered in time and was germane. Consequently, if its allegations were sufficient to destroy the force of the demurrer, the judgment of the court should be reversed. On the contrary, if the incorporation into the petition of this amendment could not legally

have prevented the case from being dismissed under the pending demurrer, the judgment should be affirmed. As this amendment was offered for the purpose of preventing the impending dismissal of the case, if it could not legally have done so, then the plaintiff has no right to complain that the case was dismissed. If this amendment had been allowed, we do not think the petition would have set forth a cause of action against the estate. of the administrator and the sureties upon his bond. We so conclude without agreeing to the reasoning by which the learned trial judge seems to have reached his decision upon the demurrer. We do not think that when Thurmond, as administrator with the will annexed, received into his hands funds from which the legacy of one thousand dollars could be lawfully paid, eo instanti, by mere operation of law, the nine tenths of this legacy bequeathed by the testator to Thurmond as trustee for his children passed from him as administrator to him as such trustee. It is clear that when Thurmond accepted the office of administrator with the will annexed of the estate of Glen, he did not thereby, by mere operation of law, accept the trust which the testator sought to confer upon him. No one is compelled to accept a trust conferred upon him by a will or a deed. If the testator had appointed Thurmond executor and had made the executor trustee for the beneficiaries of this trust fund, and Thurmond had qualified as executor, the case would have been different; for then the acceptance of the office of executor would be construed into an acceptance of the office of trustee. He could not accept the executorship and decline the trust conferred upon the executor. 2 Beach on Trusts and Trustees, § 376; Earle v. Earle, 93 N. Y. 104. Even then, the question could arise whether the trust fund had really passed from him in the one capacity to him in the other. Here, however, the trust conferred upon Thurmond was a purely personal one, wholly independent of and disconnected from the office and responsibility which he assumed when he accepted the office of administrator with the will annexed. He did not, therefore, accept the trust in question when he accepted the office of administrator.

One appointed as trustee may so act, however, in reference to the subject-matter of the trust as that the law will conclusively imply an acceptance by him of the trust. And after acceptance, no disclaimer will remove the character of trustee. Civil Code, § 3190;

*Bethune* v. *Dougherty*, 30 *Ga.* 770 ; *Mounger* v. *Duke*, 53 *Ga.* 277. It was held in Conyngham *v.* Conyngham, 1 Ves. Sr. 522, a case decided in 1750, that "A trustee, with notice of his appointment as such, interfering with the subject-matter, *can not repudiate the trust and say he acted merely as factor or agent.*" In Urch *v.* Walker, 14 Eng. Ch. R. (3 Myl. & C.) 702, "A testator gave a legacy of 1100 *l.* to two persons, upon certain trusts, for the benefit of his daughter and her children ; he then, after making some other devises and bequests, proceeded to give a messuage to the same persons, upon trust for his widow for her life, and after her decease to apply the rents for his grandson H. during his minority, and to convey the messuage to H. at twenty-one; and afterwards, by a deed, which recited the devise of the messuage upon the trusts of the will therein stated, the death of the widow, and that, in her lifetime, H. attained twenty-one, 'whereby it became unnecessary for them to act in the trust declared by the will, and in fact they never intermeddled therein; but inasmuch as the legal estate in said messuage was still outstanding in them by virtue of the recited will, they had consented, at the request of H., to convey such estate to him,' the two persons named in the deed conveyed the devised messuage to H." It was held : "That the execution of this deed was of itself sufficient evidence that the persons who executed it had accepted and acted in the trusts of the will." In Maccubbin *v.* Cromwell, 7 Gill & J. (Md.) 157, it was held : "The duties and liabilities of a trustee can not be imposed upon a man without his assent or against his will ; but where one is appointed trustee (even against his consent) and, with a knowledge of such appointment, interferes with the trust property in such a manner, and to such an extent, as can be accounted for upon no other ground than an acceptance of the trust, such interference will be sufficient proof of his acceptance, and subject him to all the liabilities of a trustee, in the same manner as if the office had been originally expressly accepted." In Kennedy *v.* Winn, 80 Ala. 165, the court held : "Any voluntary interference with the trust property will be held an acceptance, unless it can be plainly referred to some other ground of action ; the onus being on the trustee to show this, and every doubt being resolved against him." So it was held in Loomis *v.* Baird, 3 McLean's R. (Ohio) 56 that, "Where any act has been done by the trustees under a trust deed, it is evidence of an acceptance." To the same effect, see Flint *v.* Clinton, 12 N. H. 430.

Did Thurmond do anything which showed that he had accepted the trust conferred upon him by the will. The question is, not whether he intended to accept the trust, but whether he voluntarily interfered with the trust property in such a way that his interference therewith can not be plainly referred to some other ground of action. It is very apparent, from the allegations of the amendment which the court rejected, that he did voluntarily interfere with the trust fund. This amendment alleged : " That as such administrator said E. J. Thurmond, when he received the said estate of John Glen, deceased, paid to himself one hundred dollars, as provided by said will, and held the remainder for his said nine children, plaintiff's usees, being the other nine hundred dollars, as the administrator with the will annexed of John Glen, deceased, and not as an individual or trustee, other than such trustee as aforesaid, to wit, administrator with the will annexed of John Glen, deceased, and that as such administrator, from time to time, made payments, out of said legacy, to plaintiff's usees, but not paying them all that was due them. . . That he partially administered said legacy as such administrator, as aforesaid, and held and treated the same as a part of said estate, with the knowledge of his sureties, for many years. . . That he made returns, annual returns, in which he shows that he held the said legacy as said administrator and attempted to administer the same as such and not as an individual." Taking these allegations to be true, Thurmond, as administrator, must have set apart from the assets of the estate the sum of one thousand dollars, as the legacy bequeathed to him by the testator, for the purposes specified in the will. That he set apart this sum as constituting this legacy seems clear from the allegation that he paid to himself one hundred dollars —— the part of the legacy which he was to receive — and held the remaining nine hundred dollars thereof for his nine children, and, "from time to time, made payments, *out of said legacy,*" to such children, and " that he *partially administered said legacy.*" He could not make payments *out of the legacy* and partially administer *the legacy,* without first having segregated the money which constituted the legacy, from which he made the payments and which he partially administered, from the assets of the estate in his hands as administrator. As administrator, whatever payments he might make, and to whomsoever they might be made, could only be made out of the estate;

they could not be made out of the legacy. As administrator, he could only administer the estate; he could not administer the legacy. Before payments could be made from the legacy, the legacy itself had to be paid. Before the administration of the legacy could begin, the sum constituting the legacy had to be severed from the estate of the testator and pass into the hands of the person who undertook its administration. Therefore, if Thurmond, from time to time, made payments to his children out of the legacy and partially administered the legacy, he must have separated the fund which went to make up the legacy from the other assets of the estate, and held it as a distinct fund belonging to the beneficiaries interested therein. When he assumed control of the legacy, made payments from it and partially administered it, he was not acting in his capacity as administrator upon the estate of Glen, but he was undertaking to discharge duties which devolved upon the trustee and not upon the administrator. The fact that his annual returns, as administrator, may have shown that he had not credited himself, as administrator, with the amount of the trust fund, as having been paid to himself as trustee, and that, as administrator, he simply took credit for the payments which he, from time to time, made out of the legacy, can make no difference, because his acts in reference to the trust fund can not be plainly referred to his powers and duties as administrator. It was not for him, in view of the duty imposed upon the trustee of making and paying interest upon each distributive share of the trust fund, from the date of the death of the testator to the time for its payment, to say: "In order to escape the onerous duties and responsibilities of the trustee, I will control, manage, and distribute this fund in my capacity as administrator." When he undertook to perform the duties devolving upon the trustee, the law implied an acceptance upon his part of the trust, and he became trustee, whether he so intended or not.

In Hill on Trustees, 215, it is said: "Where the same person is appointed both executor and trustee, it is difficult, though sometimes of importance, to determine when the office of executor has ceased, and that of trustee has commenced. The rule appears to be, that if a part of the assets have been clearly set apart and appropriated by the executor to answer a particular trust, he will be considered to hold the fund as trustee for those trusts, and no longer as a mere executor. In the absence of any such conclusive

evidence, as the execution of the trust deed, or the probate of the will, the actions and conduct of the person who is appointed trustee may constitute equally binding proof of his acceptance of the office. Therefore if the persons, who are nominated in a deed, in any way act in the management of the trust estate, they will be considered to have undertaken the trust, exactly as if they had executed the instrument: and the same rule obtains where the trust is created by will." The allegations of the proposed amendment to the petition which we have been considering show not only facts from which the law will conclusively presume an acceptance by Thurmond of the trust conferred upon him by the will, but also show, as we have heretofore indicated, that the trust fund had passed from him in his capacity as administrator to him in his capacity as trustee. This being true, no cause of action was set forth in this proposed amendment against the estate of Thurmond and the sureties on his bond as administrator of the estate of Glen. Taking the allegations which we have been considering to be true, whatever cause of action the plaintiff's usees may have had was against the estate of Thurmond alone, based upon his liability as trustee, and not upon his liability as administrator with the will annexed of Glen's estate. Consequently the ordinary of the county had no cause of action, in behalf of his alleged usees, even against Thurmond's estate. It follows that the judgment of the court below must be affirmed.

*Judgment affirmed. All the Justices concurring, except Little and Lewis, JJ., absent.*