LOVE *vs.* THE STATE OF GEORGIA.

1. Taking all the evidence in this case together, it is plain that the defendant acted under duress, and that his consent to the arrangement by which he agreed to a transfer of certain property to the prosecutor was not free, but that his will might have been con-

strained by the threats, and his conduct induced by the violent· conduct, of the prosecutor. If such were the case, it would not only avoid the contract,·but do away with the sale which, it is·alleged, was thereby effected. And in such a case, the defendant could not be convicted of larceny for subsequently removing the property.

2. In order to vest a title under a contract of sale of personalty, the agreement must ascertain the precise article to be delivered, the price should be agreed or paid, and where the quantity is to be taken from a bulk, it should be set apart and delivered, or there should be an agreement to consider it as belonging to and held for the purchaser. If the contract be merely executory, the carrying away of the property by the vendor does not make him guilty of larceny.

March 5, 1887.

Criminal Law. Sales. Duress. Title. Before Judge KIBBEE. Pulaski Superior Court. May Term, 1886.

Love was indicted for larceny from the house. The property charged to have been stolen was certain corn belonging to one Grace. The defendant was convicted. He moved for a new trial, which was refused, and he excepted. The other facts are reported in the decision.

MARTIN & COCHRAN, for plaintiff in error.

C. C. SMITH, solicitor-general, by HARRISON & PEEPLES, for the State.

HALL, Justice.

The question on which this case turns is, whether the contract between the defendant, Love, and the prosecutor, Grace, made on the 28th of December, 1885, conveyed the title to the corn, alleged to have been stolen by the defendant, out of him, and placed it in Grace. If it did not so convey title, the defendant could not have been convicted of larceny from the house, and a verdict finding him guilty would be contrary to law. Whether the contract under which it is claimed the title was conveyed to·

the prosecutor had that effect, will depend upon its validity and completeness.

1. It is scarcely doubtful that this contract and sale was the result of duress on the part of the prosecutor towards the defendant, whose free will was constrained and whose consent was induced by threats of the prosecutor to do him bodily harm. Those threats might have constrained his will and actually have induced him to enter into this contract contrary to his will. If such were the case, it would not only avoid the contract, but do away with the sale which, it is alleged, was thereby effected. Code, §§2752, 2637, 2633; *Crawford vs. Cato*, 22 *Ga*. 594; *Jones vs. Rogers & Son*, 36 *Ga*. 157. In both these cases, the party who was induced to make the contract by duress was relieved from its operation and effect, and it was declared void in consequence of the illegal manner in which it was induced.

In this case, the defendant was a negro and a tenant of the prosecutor, who had borrowed from him corn, made on the place the previous year, under agreement to return it at the end of the year 1885. The prosecutor had sold the defendant a mule, and at the time of the sale took from him a note for $170, payable on the first day of October, 1885; and at the same time executed to him a mortgage on a mule, and the corn and fodder then on the place, consisting of 100 bushels of corn and three stacks of fodder. This note and mortgage both bore date on the 15th of November, 1884, and the corn and fodder mentioned in them was that which the defendant was permitted to use, and which he promised to return at the end of 1885. It seems that the defendant, on the 28th day of December, 1885, had paid all the rent due to the prosecutor for the year 1885, and had also paid a store account which he owed him; but being unable to pay for the mule, he had delivered it to the prosecutor on that day, as he alleges, in satisfaction of the entire claim that the prosecutor had against him. The prosecutor insists that he was also to

have the corn made on the place that year, and which was stored in the crib in satisfaction of this claim. No price was agreed on for the corn or the mule, nor was the quantity of corn ascertained. The prosecutor supposed that there were ninety or a hundred bushels of corn in the crib, worth in the market sixty-five cents a bushel. This alleged contract was made on Saturday, and the prosecutor was to go on Monday to measure up the corn. At the same time, the defendant turned over to the prosecutor the key of the crib, which prosecutor redelivered to him to enable him to get out some clothing and meat that belonged to his family. On the trial, the prosecutor swore that the defendant agreed to turn over to him all the corn and fodder in settlement of the demand he held against him. He testified that he cursed the defendant on Saturday, December 28th, and told him not to move the corn; said he ought to have cursed him more, and told him if he moved the corn, he would hurt him. Borum, one of the State's witnesses, swore that he heard Grace, the prosecutor, say to the defendant that he would punish him if he moved the corn. The defendant replied that "he would have nothing more to do with it." Love, another witness for the State, swore that he was present on that day and heard the prosecutor tell the defendant, "if he moved the corn from the crib, he would get his meat." He was cursing the defendant, "and told him it was his corn, and not to move it, for if he did he would hurt him." The defendant, in his statement, said that Grace cursed him and had out his knife, and told him not to move it, or he would hurt him; not to move any of the corn or fodder, that he was going to take it;" he was afraid all the time that Grace was going to hurt or kill him; he never did consent to his taking any corn or fodder, and never turned it over to him or consented to his taking it. He swore he would kill him if he moved it, and would ask defendant if he heard him, and defendant would say he did. The defendant said that it was his corn, and that Captain Martin, his lawyer,

told him he could move it, as he had never given it up; he never did consent that Grace should take his corn; Grace kept him afraid of him, and when he said he was going to take it, defendant was afraid to say he should not. Although the prosecutor had the right to rebut this statement, it is somewhat remarkable that he offered no evidence contradicting or explaining its material parts. Taking all the evidence together, it is quite plain that the defendant's consent to this arrangement was not free, and that his will might have been constrained by the threats, and his consent to it induced, by the violent conduct of the prosecutor.

2. But had there been no violence or intimidation used on that occasion, and had the contract been fair and voluntary, it is not certain that it was sufficient to have vested the title to the corn agreed to be conveyed by it in the purchaser. To have this effect, it should have been executed; whereas it was only executory. There was no cancellation or delivery of the note and mortgage held by the prosecutor to the defendant; no price was paid and none agreed on. The quantity of corn contained in the crib had not been ascertained. This was to be done by measuring it on the following Monday. There was no estimate made by the parties as to the quantity contained in the crib. According to the mortgage, the quantity of corn loaned to the defendant was about 100 bushels. So incomplete a contract could scarcely, under the well-settled rule of law, divest the defendant's title to the property in question and vest it in the prosecutor. The principle that, in order to vest title under a contract of sale, the agreement must ascertain the precise article to be delivered, that the price should be agreed or paid, that where the quantity is to be taken from a bulk, it should be set apart and delivered, or there should be an agreement to consider it as belonging to and held for the purchasers, seems to be well established, both by our own decisions and the decisions of other courts, and it has gone into the text-books on sales and contracts.

*Bowers vs. Anderson, adm'r* 49 *Ga.* 14?; *Flanders & Huguenin vs. Maynard,* 5S *Ga.* 56; 1 Benj. on Sales, §408 ; *Ib.* §§488, 508, and succeeding sections *passim.*

That the defendant could not be indicted for stealing corn when he had not parted with the title, and had only entered into a contract to part with it, which was inchoate and not fully performed by either of the parties, we think is too plain to admit of doubt. To justify his conviction, the evidence should have removed all reasonable doubt upon this point, as well as upon the question of the duress by which the defendant may have been induced to enter into the agreement. Justice, as it seems to us, requires a fuller investigation of these questions than this record discloses was had on the trial.

Judgment reversed.