## Nicholls *et al. vs.* Popwell.

1. The overruling of a demurrer is not a good ground in a motion for new trial, even if such overruling be wrong.
2. Where the complainant alleged in his bill that he saw Nicholls, who told him to go and see Mumford, that Mumford knew his views about the sale of the land, and whatever he did would be satisfactory to Nicholls; and that in accordance with these instructions he went to see Mumford and purchased the land described in the bill from him, acting for himself and as agent for Nicholls, and Mumford gave him their joint receipt for the purchase money, in which the premises were described; under these allegations the contract of the defendants was a joint one, and the superior court of Wayne county (which was the county of Mumford's residence) had jurisdiction of Nicholls, although he resided in Pierce county.
3. The verdict is sustained by evidence, and is not contrary to law.
4. The court committed no error in allowing the complainant to explain a joint letter written by himself and Mumford to Nicholls, after the dispute arose between him and respondents.
5. Where the production of a deed is compelled over objection, and such compulsion is made a ground of the motion for new trial, the ground of objection must be specified.
6. The verdict, taken in connection with the bill and amendment thereto, sufficiently describes the lands, specific performance of a contract as to which is prayed, and it is not too uncertain to be executed.
7. Taking the whole evidence together, this court cannot say, as a matter of fact, that the verdict covers land to which respondents had no title. This was a question for the jury, and they having found that respondents had title to the lands which com-

plaiuant claims they sold to him, and the court below being satisfied with their verdict, it will not be interfered with here.

8. Where complainant in his bill not only tendered the balance of purchase money to respondents, but, in case they refused to comply with his request, asked the court to take charge of it and relieve him therefrom, it was not necessary for the jury to make any finding as to this balance.

(a) The court in its decree dealt with this balance, and directed that complainant should pay it to respondents upon their making him a deed to the land.

9. When exceptions *pendente lite* are made to the ruling of the court below, and error is not assigned in the main bill of exceptions, and the exceptions *pendente lite* are brought up in the record, counsel, before the argument begins here, should assign error thereon. If he wait until the argument is nearly concluded, it is too late.

10. It is not proper practice to make the rulings of the court below, which are excepted to *pendente lite*, and the exceptions filed and certified as required by the statute, grounds of the motion for a new trial.

April 16, 1888.

Demurrer. Practice. Contracts. Jurisdiction. Evidence. Verdict. Decree. Exceptions *pendente lite.* Before Judge Adams. Wayne superior court. March adjourned term, 1887.

The description of the lands in the original bill is as follows: "A certain tract, lot, body or parcel of land, with the appurtenances thereunto belonging, situate, lying and being in said county of Wayne, and as well extending over into the county of Glynn and said State, and being immediately on the line of said two counties of Glynn and Wayne, and containing fifteen hundred acres of land, be the same greater or less, and commonly and well known as the 'Palmer settlement' and 'Palmer lands,' adjoining and hereinafter particularly mentioned and accurately described, and as well the inheritance in fee simple thereto;" and the further description there is: "Said premises were bounded as follows, to-wit: Said premises, with the appurtenances, were bounded on the west by the lands of J. R. Allison, H. L. Covington, the estate of Mc-

Intosh and the Satilla creek; north by a line running east and west, and far enough to the north to include within said premises a spot of ground well known and readily identified as the 'old saw mill site,' the same being the spot whereat one Dempsey B. Palmer—after whose name said premises derive their appellation of Palmer place and Palmer land adjoining—once operated a steam saw mill, and as well by parcels of land known as the Wiggins land, and also College Place, to which the tracts in question, it was agreed, should and did extend; east by a line running northwardly and southwardly, and far enough to the eastward as to reach said College Place, and include another parcel of land there well known as Gap Field, or Gap Branch, and also by said College tract and lands of Francis D. Scarlett; and south by a line running eastwardly and westwardly, and far enough to the southward as to include certain negro settlements of Abner Wright, Steve Williams and Bella Berrie (now Ed Cummings), and the land of Madison Lowe and of the old McIntosh tract, now claimed by the McIntosh heirs at law; said tract was to run down to said Satilla creek, so as to include the place where one Manigo Wiggins at that time kept a store and bar-room. . . . . Said tract, body, piece or parcel of land has and is embraced within the following metes, courses and distances, as follows, to-wit: Commencing on the extreme northwest corner of said Palmer settlement and lands adjoining, and at the place where said tract corners on to the lands of J. R. Allison and W. M. Wiggins, and running thence north 80° east fifty chains to a stake on the old Fort Barrington road; thence south along said road and College lines 42 chains to a stake east of said road; thence southwardly along College lines 40° west 162 chains to a stake east of Gap Branch or Gap Field; thence southwardly 11° west, and along the line of Francis D. Scarlett's land to a stake on the line of Madison Lowe's land; thence west 6½ chains to pine on edge of a pond; thence south 6 chains to stake; thence south 75° west

along Madison Lowe's land 42 chains to stake; thence
north along the McIntosh land line 42 chains; thence
north 15° west along line of McIntosh lands 25 chains to
pine; thence south 75° west along McIntosh land 116
chains to Satilla creek; thence up said creek to a line
north of said road; and thence south 67° west to stake
north of said road; and thence north 195 chains to initial
point. ' All of which will appear by reference to the plat
hereto annexed.' " See record, page 30.

The bill recites further : "Said lines and boundaries were
the ones agreed on between him and said respondent, and
that they sold to him all the land with the appurtenances
within said boundaries," and further, "said respondents
guaranteed and agreed that said tract did embrace one
thousand acres, and while these titles only set out one thou-
sand acres, yet they were sure there was far more than that,
for their titles showed said boundaries, and they felt cer-
tain said boundaries contained far more acres, and what-
ever number of acres in the same they would make him
deeds as mentioned, embracing the Palmer settlement and
lands adjoining, whereon is situate the old Palmer resi-
dence, and stating and giving the said boundaries."

The amendment says that the complainant amends the
bill in the matter of description, and then recites, " the
Palmer place and the Palmer lands adjoining are the same
lands described in the exhibits to the answer of said re-
spondent, Sylvester Mumford, filed in this court on March
17th, 1885, that is to say: The deed from John N. Good-
bread, deputy sheriff of Wayne county, Georgia, to said
Sylvester Mumford and John C. Nicholls, dated the 2d of
March, 1875, and recorded September 23d, 1875 ; and the
other deed dated March 4th, 1877, from John N. Good-
bread, sheriff of said county, to them, said Sylvester Mum-
ford and John C. Nicholls, and recorded May 15th, 1877 ;
and a full description of which as contained in said last
mentioned deed is as follows:    All that lot of land situate,
lying and being in said county of Wayne and State of

Georgia, four miles below the village of Waynesville therein, and known as the Dempsey B. Palmer place, and bounded as follows: North by Brown's land, south by Dr. Jelks' land, and west by Flowers' land, situated in the third district of said county of Wayne and containing three hundred and thirty acres more or less; which described tract your orator avers is the Palmer place proper; and a full description of which as contained in said first mentioned deed is as follows: All of those certain tracts of land, to-wit: One tract containing one hundred and fifty acres, granted to Samuel S. Morgan, November 22d, 1836. One tract containing six hundred and thirteen acres, granted to J. R. Richard on the 14th of November, 1859. One tract containing seven hundred acres, known as the John Brown land. One tract of five hundred acres granted to William Ratliff and conveyed by him to Dempsey B. Palmer, and known as the William Ratliff lands. One tract containing two hundred acres, lying near the ford of Satilla creek and adjoining the late homestead place of Dempsey B. Palmer, and deeded to him by Robert Stafford. All of said tracts of land lying and being in the third district of said county of Wayne. And which last described tracts your orator avers are the lands adjoining said first described tract, and are the Palmer lands adjoining the Palmer settlement. And your orator avers that said described lands are the lands of Dempsey B. Palmer, purchased by said respondent, and are the lands which they agreed to convey to him as stated in his original bill, and are the lands known as the Palmer settlement or place and Palmer lands adjoining. And said complainant says further that said lands described in this amendment are the same said lands mentioned and described in said original bill."

The jury found this verdict: "We the jury find for complainant, giving boundaries particularly described in complainant's bill and amendment thereto."

In connection with the above the decision sufficiently states the facts of the case.

S. W. HITCH, by HARRISON and PEEPLES, for plaintiffs in error.

COURTLAND SYMMES and J. H. LUMPKIN, *contra.*

SIMMONS, Justice.

Popwell filed his bill in Wayne superior court against Sylvester Mumford, of Wayne county, and John C. Nicholls, of Pierce county; wherein he alleged, in substance, that he had purchased a certain tract or tracts of land from the respondents, for the sum of $850; that he was to pay in cash $700, and to pay $150 when Nicholls should make him a warranty deed to his half-interest in the land, and Mumford a quit-claim deed for his half interest; that he paid the $700 in cash to Mumford, to whom Nicholls had sent him, telling him that any trade or arrangement he made with Mumford would be satisfactory to him (Nicholls); that Nicholls and Mumford owned the land jointly; and that when he paid the money he got a receipt for the same, signed "Nicholls & Mumford," each one of them taking half of the money; that Nicholls and Mumford refused to comply with their part of the contract, pretending that they had only sold him the Palmer place, which contained only 330 acres; whereas in truth and in fact, they had sold him not only the Palmer place, but the adjoining lands thereto, containing a thousand acres more or less. He therefore filed this bill, asking a decree for specific performance, compelling the respondents to make him a deed or deeds in accordance with their contract, and tendering in his bill the balance of the purchase money. Nicholls demurred to the bill, upon the grounds: (1) that he did not reside in Wayne county but in Pierce county, and that therefore the court had no jurisdiction as to him; and (2) because said contract was too uncertain

as to the quantity of land, and the description too im-perfect as to the metes and bounds to be capable of specific performance. He also answered the bill, alleging that he had never bargained or sold to the complainant the land described in the bill, and that to a considerable portion of the land described therein, he had no title, and never had. It was admitted that he did tell the complainant that he was willing to take $400 for an undivided half interest in the Palmer place, 320 acres, and would make him a warranty deed to that place. Nicholls admits having received half of the $700 paid by the complainant, and says in his answer that upon the payment of the other half, he is willing to make the complainant a deed to the Palmer place, and that the Palmer place was well worth the $850.

Mumford in his answer admits receiving the money as charged by the complainant, but denies that he ever made any contract of sale with him as set out in his bill. He alleges that the complainant represented to him that he had made said contract with Nicholls, the respondents' co-tenant, and in giving the receipt for the money, he acted solely on the representations made to him by the complainant, to the effect that he had purchased the lands adjoining the Palmer place, with said place, from said Nicholls; that he knew nothing of the boundaries of the land, as described in the complainant's bill, because the deeds were in the possession of his co-tenant, Nicholls, and that he would not have sold all of that land for $850, and intended only to sell the Palmer place, 330 acres; that he informed the complainant that he would not sell said lands for less than $1,500; that the Palmer place was itself worth the $850, and that he was willing to make a deed to that place according to his contract, when the balance of the purchase money was paid.

When the case came on for trial in the court below, the demurrer of Nicholls was overruled by the court; where-upon he filed his bill of exceptions *pendente lite*. Upon

the trial of the case, the jury found in favor of the complainant, and found the boundaries of the land to be as described in the complainant's bill and amended bill. The court decreed that, upon payment of the balance of the purchase money, the respondents should make deeds as set out and claimed in the complainant's bill. The respondents made a motion for a new trial, upon the several grounds contained therein, which was overruled by the court; whereupon they excepted.

The main points in the motion for a new trial argued before us were: (1) that the court erred in overruling the demurrer of the respondent, Nicholls, to the bill; and (2) that the verdict was contrary to law and to the evidence.

1. This court has held that the overruling of a demurrer is not a ground for a motion for a new trial, even if the overruling be wrong. *Griffin, adm'r, vs. The Justices, etc.,* 17 *Ga.* 96 ; *Rogers, adm'r, vs. Rogers et al.,* 78 *Ga.* 68. Whether the decision overruling the demurrer be right or wrong, it cannot be made the ground for getting another jury trial, is declared by Judge BENNING in the former of the cases above cited. We therefore cannot consider the main ground relied upon by counsel for the plaintiff in error.

2. If, however, this were not the rule, and we could consider this ground, we would hold that the court did right in overruling the demurrer. In our opinion, the contract set out in the bill of complaint was a joint contract, made by Nicholls and Mumford jointly. Popwell alleges in his bill that he saw Nicholls, and that Nicholls told him to go and see Mumford, that Mumford knew his views about the sale of the land, and that whatever Mumford did would be satisfactory to him (Nicholls). He alleges that in accordance with these instructions from Nicholls he did go to see Mumford and purchased the land described in the bill from Mumford, who acted for himself and as agent for Nicholls, and that Mumford gave him their joint receipt for the purchase money of the land, and in the receipt described the

premises. These allegations, in our opinion, made it a joint contract, and gave the superior court of Wayne county jurisdiction over Nicholls, although he resided in Pierce county.

3. We have examined carefully the other grounds of the motion, and the evidence as sent up in the record, and in our opinion, the verdict is sustained by the evidence, and is not contrary to law nor to the principles of justice and equity.

4. Nor did the court commit error in allowing the complainant to explain the joint letter written by himself and Mumford to Nicholls, over the objection of the respondents, as complained of in the 4th ground of the motion. This letter was written after the dispute arose between him and the respondents, and we think he had a right to explain why it was written, and what he meant by certain expressions contained therein.

5. The 5th ground of the motion is so vague and uncertain that we will not discuss it. It does not set forth what was the objection to the production of the deed, whether it was the kind of notice under which the paper was required to be produced, or whether the objection was for want of time in the service, or whether it was to the deficiency of the description of the paper, or how it was required to be produced. We have already discussed the 6th ground of the motion, which refers to the overruling of the demurrer.

6. The 7th and 8th grounds complain that the verdict of the jury is too uncertain to be executed; because the lands described in the original bill are not identical with those described in the amendment to the bill, and the verdict is largely in excess of the number of acres claimed by the complainant. We do not think there is any merit in these grounds.

7. The 9th ground claims, in substance, that if we read the original bill and amendment and the exhibits attached to the respondents' answer, together with the answer and

evidence of the respondents, it is clear that the verdict covers the land to which the respondent has no title. Perhaps this may be true, if we look only to the matters referred to in the motion; but taking the whole evidence together, the complainant's evidence as well as that of the respondents, we cannot say as a matter of fact that the verdict does cover land to which the respondents had no title. This was a question for the jury to pass upon, and they having found that the respondents did have title to the lands which the complainant claims they sold to him, and the court below being satisfied with their verdict, we will not interfere therewith upon a ground so uncertain as this.

8. The 10th ground complains that the verdict did not dispose of all the issues, because it did not find that the complainant should pay over the balance of the purchase money which he admitted in his bill to be due. We think there is nothing in this ground. The complainant, in his bill not only tenders the balance of the purchase money to the respondents, but in case they refuse to comply with his request, he asks the court to take charge of it, and to relieve him therefrom. There was therefore no necessity for the jury to make any finding as to this balance of the purchase money. The court in its decree dealt with this balance, and decreed that the complainant should pay it to the respondents upon their making him a deed to the land.

9. As remarked before, when the court overruled the demurrer of Nicholls, he tendered his bill of exceptions *pendente lite*, which was certified by the court, and which was sent up in this record. When the case was called in this court, counsel for the plaintiff in error had not assigned error upon this bill of exceptions *pendente lite*, and did not ask leave to assign error. When he commenced his concluding argument, he then asked leave to assign error, which was refused, the court holding that he was too late to do this after the case had been fully argued

with the exception of the concluding argument. We think the proper practice is, that when exceptions are made *pendente lite* to the ruling of the court below, and error is not assigned in the main bill of exceptions, and the exceptions *pendente lite* are brought up in the record, counsel, before the argument begins here, should assign error thereon. Code, §4250. If he waits until the argument is nearly concluded, it is too late.

10. It is not the proper practice to make the rulings of the court below which are excepted to *pendente lite*, and the exceptions filed and certified as required by the statute, grounds in the motion for a new trial.

Judgment affirmed.