## SCOTT *v.* LIDDELL.

1. Where the principal of a promissory note was made payable a given number of years after its date, with a stipulation in the note for the payment of the interest annually, the contract to pay interest was severable from that to pay the principal, and a suit for interest past due could be maintained without regard to the time when the note matured as to principal. This being so, it follows that the payee of such a note could lawfully in writing assign to another the principal thereof and reserve to himself the interest, with the right to collect the same.

2. Where such a note also contained a stipulation that the principal

should become due *instanter* on thirty days default in the payment of any interest instalment, and before any default in the payment of interest had occurred the payee assigned to another the principal only of the note, reserving the interest and the right to collect the same, such payee could, as between himself and the maker of the note, lawfully extend the time of paying any annual instalment of interest, and his so doing would not, as to the assignee, render the principal of the note immediately due so as to authorize the latter to bring suit thereon in advance of the time fixed in the note itself for the payment of the principal in case there was no default in payment of interest.

December 2, 1895.

Complaint on note.   Before Judge Van Epps.   City court of Atlanta.   March term, 1895.

On January 25, 1894, Scott sued Liddell on a promissory note dated May 12, 1890, payable to J. F. Walker or order, for $8,500, balance purchase price of certain land, due on or before ten years after date, with interest from [date], payable annually at the rate of six per cent. per annum, "principal to become due instanter on thirty days default in payment of any interest instalment." The note was endorsed in blank by Walker. It bore credits, signed by Walker, for the interest instalments to May 12, 1892. The declaration alleged that Walker, for value, transferred and endorsed the note to petitioner, and that the interest due May 12, 1893, was not and has not been paid, and that the principal, interest and attorney's fees were due. The nature of the defense will sufficiently appear from the report hereinafter made.

Upon the trial plaintiff introduced the note.   Also, a writing signed by Walker, dated November 25, 1892, stating that for value received and as part security for the payment of twelve promissory notes given by Walker to Scott, aggregating $10,000, four due September 1, 1893, four due September 1, 1894, and from September 1, 1895, with interest from date at seven per cent. per annum, and dated September 1, 1892, Walker transferred to Scott the mortgage of Liddell to Walker, dated May 12, 1890, due

May 12, 1900, for $8,500 and interest at six per cent. per annum on nine and three hundred and fifty-two one thousandths acres of land on Bleckley avenue as fully described in said mortgage, with the notes which said mortgage was given to secure. Also, an agreement signed by Scott and Walker, September 9, 1892, reciting that Scott, in consideration of the notes of Walker for $10,000 (above described), had agreed to sell to Walker an undivided half of certain property of the Austell-Lithia Land & Spring Company; that Scott was to buy up and own all the capital stock of said company within the next sixty days, and then to deed said undivided half to Walker; that to secure the $10,000 Walker was to execute his promissory note so that only one third of the $10,000 should be payable on the first day of September for the following three years, with interest from September 1, 1892, at seven per cent. per annum; and that Walker had turned over to Scott, as collateral security to secure the payment of said notes, certain shares of stock, and also had transferred in writing to Scott the mortgage from Liddell to Walker, above mentioned. Also, another agreement signed by Scott and Walker, November 25, 1892, to the effect that as part of the above agreement it was understood that Walker should be allowed to collect and have all interest as it accrued on the Liddell notes and mortgage above mentioned, which had been transferred by Walker to Scott as collateral security as set out above, Walker to have and collect the interest thereon as the same became payable. It was admitted that the note sued on was transferred and delivered by Walker to Scott on November 25, 1892, but defendant had no knowledge of said transfer.

Defendant's evidence showed that on May 31, 1893, Walker asked him for the interest, $510, on the note in suit. Defendant said he would like to have some time on this interest, and offered to pay eight per cent. interest on the interest then due. Walker agreed to this, and accepted

a note for $90, due sixty days after date, as part of the $510. This note was for temporary use, and the agreement to wait for the interest due was indefinite as to time. It was a part of that contract that the interest due May 12, 1893, was not to become due until after Walker had made a written demand for it of defendant. It was also then agreed between Walker and defendant, that no advantage was to be taken of the failure to pay the interest due within thirty days, or of the new contract as to interest, to declare the principal of the note in suit due, and that the principal of the note in suit should not become due until after the written demand for the interest had been made of defendant by Walker and defendant had refused to pay it. Scott was not present at this interview, nor did Walker exhibit the note in suit. Shortly after defendant was served with a copy of the suit, about the last of January, 1894, he went to plaintiff in Liebman's office and tendered him the interest due on the note. Scott declined to accept it and said, "I have nothing to do with that. That is Judge Walker's matter. You must see him," or, "I have nothing at all to do with it. I am acting for Judge Walker. You must see him." Plaintiff testified that when defendant made said tender to him, he declined to receive the money and said the matter had passed into a suit, and that defendant must see his attorneys. The testimony of Liebman tended to corroborate that of plaintiff.

Under the charge of the court the jury found that the principal of the note sued on was not due, and the court entered judgment that the action abate. Plaintiff's motion for a new trial was overruled, and he excepted. The motion was upon the grounds that the verdict was illegal, and that the court erred in directing the verdict.

*John L. Hopkins & Sons*, for plaintiff.
*A. H. Davis* and *Candler & Thomson*, for defendant.

Atkinson, Justice.

The official report states the facts.

1. The question as to whether the contract to pay the principal of a promissory note and the contract to pay interest thereon are so united as to be incapable of separate assignment and enforcement in the hands of separate holders, we are now for the first time in this State called upon to determine.

We know of no principle of law which is violated by such an arrangement, and can see no reason why it should not be allowed. While the contract to pay interest is dependent upon the contract to pay principal, it is also in a certain sense independent. They may be made to stand for execution at different times. The agreement to pay interest may be void for usury, and yet the agreement to pay principal remain unaffected. By agreement between the parties, the principal may be discharged and the accrued interest still remain due, and *vice versa*. So it would seem that the right to demand an enforcement of the one is not dependent upon the enforcement of the other; and hence we can see no good reason why the holder of a promissory note cannot retain title to it and give or sell the increment of interest to another, so as to retain to himself the right to collect the principal and vest in that other the right to collect the interest, and *vice versa*. If this be true, then one may well be pledged without the other. Nor does the fact that actual delivery of the evidence of indebtedness is essential to the validity of the pledge, affect the principle stated, as the one evidence of indebtedness may well represent several obligations to pay. The quality of separability between principal and interest is recognized in many classes of cases, notably in case of bonds bearing interest, with coupons attached representing the accruing interest. So if in the one case principal and interest are separable, they are not so indissolubly connected as to be incapable of dissociation. That the contract to pay principal and interest may be

separated, we think, has been practically determined by those cases in which it has been held by this court that a contract to pay interest upon interest accrued and unpaid is valid and not opposed to the statutes against usury; otherwise, the collection of interest upon interest could not be upheld. See *Scott, trustee,* v. *Saffold,* 37 *Ga.* 384. So a separate action may be maintained for the recovery of interest accruing before maturity of the note, even though there be no provision in the note expressly authorizing such action. *Calhoun et al.* v. *Marshall, trustee,* 61 *Ga.* 275. So under ordinary circumstances dividends upon the stock of incorporated companies, accruing after it is delivered in pledge, follow the stock and vest in the pledgee the right to have them paid to him; but the contrary may be provided by special agreement, and then the pledgor is entitled to receive them. *Guarantee Co.* v. *East Rome Co.,* 96 *Ga.* 511. So in the present case we see no difficulty in holding that the holder of the note could lawfully deliver it in pledge, and by special agreement with the pledgee provide that his interest as pledgee should attach only to the principal, leaving the right to the accruing interest in the pledgor, and subject to his control.

2. The promissory note sued on in the present case was made payable at the expiration of ten years from its date, but contained a stipulation that if the accruing interest were not paid at stated times, the entire debt should immediately become due. The principal of the note was pledged before any instalment of interest became due, and the accruing interest with the right to collect the same was reserved by the payee. When an instalment of interest became due, the payee extended to the drawer time within which to pay the interest beyond that stipulated in the note, and thereafter the pledgee brought suit for the principal debt, alleging that it had matured by reason of the non-payment of interest to the payee. A plea in abatement was filed upon the ground that the suit was premature, and this

plea was sustained and the suit dismissed. The question is, could the payee, after delivery of the note in pledge, enter into an arrangement with the maker by which the contract as expressed in the note could be affected or changed so as to prevent its maturity because of the non-payment of interest? It must be admitted that, as a general proposition, two persons cannot by contract between themselves affect a right of a third person not a party to the agreement, as against either of the two so agreeing. The stipulation for prompt payment of interest made time of the essence of the agreement, and so it would have remained had not the person to whom the obligation to pay interest was due agreed with the person obliged to pay, that another, and to the debtor more convenient, season should be substituted. It will be observed that in the agreement under which the note sued on was delivered in pledge it was expressly stipulated, not only that the title to the interest should be reserved to the pledgor, but that in the matter of its collection he should have absolute control. He had over it the unlimited power of disposition. He could have given the interest as it accrued to the person from whom it was due, and the holder of the principal could have had no cause to complain. Nor is it a reply to the exercise of this right, that thereby the probable maturity of the pledgee's right to sue would be postponed. If prompt actual payment of interest had been deemed of sufficient importance, he should, in accepting the pledge, have stipulated for the control of the interest as well as the principal. The power of unlimited control of the matter of collecting the interest involved the exercise of unlimited discretion as to the means to that end, and these were the rights reserved to the pledgor. Nor is the pledgee without his remedy, not against the maker of the note, but against the pledgor. It is one of the obligations of the pledgor that he will do no act which will tend to deprive the pledgee of his title to the thing pledged, nor pending the bailment do unlawfully any act to lessen the

security afforded thereby; and hence if in the exercise of a right reserved by him in the thing pledged he does any act not authorized in the contract upon which the bailment rests, which tends to either of these results, to the injury and damage of the pledgee, he is answerable for such damages. Whatever rights he may have must be exercised in such manner as not to wrongfully deprive the pledgee of the benefit of the bailment.       *Judgment affirmed.*