## ALEXANDER, administratrix *v.* CHIPSTEAD.

1. By the act of August 15, 1921 (Ga. Laws 1921, p. 233), when the final bill of exceptions shows that exceptions pendente lite were properly filed in the trial court, and when the contents of such exceptions pendente lite are recited in the bill of exceptions, or a copy thereof appears in the transcript of the record, an assignment of error in the final bill of exceptions, either upon the exceptions pendente lite or upon the rulings therein excepted to, is sufficient; and this act, being remedial in its nature, applies to bills of exception sued out and certified before its passage.

2. Independently of said statute, an assignment of error on the rulings excepted to in exceptions pendente lite, and not on such exceptions themselves, is a good assignment of error.

3. A plaintiff may at any stage of the cause, as a matter of right, amend his petition in all respects, whether in matter of form or of substance, provided there is enough in his petition to amend by; and this he may do, if made before any order or judgment sustaining a demurrer to his petition has been entered, although, in reply to a question by the court at the conclusion of the argument on the demurrer, his counsel replied that he had nothing further to offer, the amendment being offered after such question and reply.

4. The court erred in rejecting the amendment offered by the plaintiff, alleging that the defendant agreed with her intestate that if he would give additional security the defendant would extend the time of payment of the interest note due November 17, 1916, for one year, and that in pursuance of the express agreement of the defendant to give such extension her intestate executed to the defendant a bill of sale of certain personal property to secure such indebtedness.

5 When the grantor in a security deed dies after the execution thereof, and the grantee undertakes to exercise a power of sale therein contained, the property should be advertised and sold as the property of the estate of the grantor.

6. The petition, without such amendment, set up a cause of action; and the court erred in sustaining the general demurrer thereto.

7. The court did not err in sustaining any of the grounds of special demurrer, except such as are pointed out in the opinion in this case.

8. The court erred in directing a verdict for the defendant, under the pleadings and evidence.

No. 2608.    March 2, 1922.

Equitable petition. Before Judge Worrill. Early superior court. March 19, 1921.

Lillian B. Gay (now Alexander) as administratrix of Eric A. Gay, filed her complaint against M. T. Chipstead, and made this case: She is the widow of said Eric A. Gay, who died November 21, 1916. Gay bought from Chipstead, on November 17, 1915, a plantation of 611 acres, more or less, known as Lime Branch

place, and in payment conveyed to Chipstead another place which he owned, and gave to Chipstead his note for $7,000, dated November 17, 1915, and due November 17, 1920, with five notes, each for $560, for the interest on said principal note, falling due respectively one, two, three, four and five years from date. To secure said notes Gay executed to Chipstead a deed to said place with power of sale. Gay died on November 21, 1916. On November 29, 1916, Chipstead approached petitioner about this indebtedness, and stated that he had no disposition to press her for the payment thereof, but was willing not only to give her time in which to arrange matters, but was also willing to assist her in any way he could in getting these matters adjusted. He suggested to her that it would be expensive to have administration on the estate of her husband, and that the proper course to pursue would be to have said Lime Branch place sold for the purpose of putting the title in her, stating that she could bid the same in, and that he would bid it in for her, when she could give her notes for said debt secured by her deed to said place. He expressly assured her, that, if a sale of the property were had, it would be merely for the purpose of vesting the title in her. On December 1, 1916, she offered Chipstead the sum due on the interest note which fell due November 17, 1916, with interest thereon to said date. At the time said interest note fell due Gay was in a dying condition. Owing to the death of her husband she was not able physically or mentally to look after the payment of said interest. At the time she tendered Chipstead said interest, he said he had not elected to declare said indebtedness due. He declined to accept payment of the interest note, stating that she had other things to think of, that there was no need of hurry, that all these matters could later be satisfactorily adjusted, and that she need not fear that he would do anything detrimental to her interest or the interest of the estate. On December 3, 1916, she, relying on said assurances, went to Florida, but before leaving she made arrangements with certain croppers to work on said Lime Branch place. These arrangements were well known to Chipstead, he having offered to assist her in procuring labor for the operation of said place for the coming year, and in her farming operations. While in Florida she received from him a telegram stating that her croppers were becoming dissatisfied and were leaving the place.

She immediately came back, and ascertained that Chipstead had been the cause of the croppers leaving the place, he having told them that she had left Georgia for good, and was not coming back, causing them to leave the place. On December 26, 1916, Chipstead attempted, under said power of sale, to sell said place to himself. She is advised and believes that he made a deed to himself. He is now in possession of said place under said deed, which is not of record. He deliberately, and with the intention of defrauding the estate out of said property and the rents thereof, refused to accept the interest. She was lulled into security by his assurance that said land would be sold only for the purpose of vesting the title in her, and not for the purpose of subjecting the same to said indebtedness. This assurance was made to her by him with the intention of defrauding her husband's estate. The sale to himself of said place is void, for the reason that she was fraudulently induced to believe that the sale was being made only for the purpose of vesting the title in her, and the further reason that the notice, under which said sale was held, does not advertise the property to be sold as the property of the estate of her intestate.

The yearly rental value of said place is $1500 or other large sum. By the statement made by Chipstead to her croppers, and their consequent dissatisfaction, causing them to leave the place, and by his unlawful entry and continued occupation of said place, he has made it impossible for her to rent the place for the coming year, and has damaged her in the sum of $1500 or other large sum per annum. The fair market value of the place is $15,000. Chipstead, just a few days prior to the death of her husband, and while he was practically in a dying condition and wholly unable to comprehend any business transaction, on November 14, 1916, fraudulently obtained his signature to a bill of sale of certain personal property, consisting of mules and farm products, knowing that he was in a dying condition and unable to transact business, as additional security for the above indebtedness. At the time Chipstead sold Lime Branch place he sold the personalty described in said bill of sale, and became the purchaser at that sale. Said personalty is worth the sum of $1500. The sale of it was wholly void, for the reason that the bill of sale did not confer upon Chipstead the power to sell it without due process of law, and

because her husband was not rational at the time of his signature. The yearly rental value of said personalty is $150. It was the duty of said Chipstead, under the circumstances, upon his election to declare the entire debt due upon default of any payment of interest, to give her ample and sufficient time to protect her rights in the premises; but instead of doing so, with the intention to defraud her he told her that he was in no hurry for said interest payment due November 17, 1916, and that she need not pay the same at that time. By the security deed Chipstead was given the power to sell said place after advertising the sale for two consecutive times in the official organ of Early county, should said indebtedness or any part thereof be not paid at maturity. The only amount due him by the estate of her husband was the interest note due November 17, 1916, which she had offered to pay, and payment of which he had declined. In view of these facts there was no such default as would give the defendant the right to declare all of said indebtedness due. Said sale was void, because the advertisement did not state that it was sold in pursuance of a power of sale granted in the security deed, nor did it state that the sale would be made by any person authorized to sell under the power of sale; also because the land brought a grossly inadequate price. Under the circumstances of the transaction, it was a fraud upon the estate of Gay for Chipstead to have treated the whole of the notes as due so soon after his death, to have sold that quantity of land in bulk, when it might easily have been subdivided and sold in parcels when it would have brought more money, and to have sold said lands on any other than the regular sales day. The plaintiff prayed that the deed from Chipstead to himself be delivered up and canceled; that the title to the land be decreed to be in the estate of Gay, subject to the lien of $7,000 and the interest due thereon, less all proper offsets; that the bill of sale, be delivered up and canceled, and the title to the personalty be decreed in her; that she recover the same from him with the profits thereof; that an accounting be had between her and Chipstead; and that she have a decree against him for the value of the rents of said place.

In the security deed from Gay to Chipstead was this provision: " Should said indebtedness, or any part, be not paid at maturity, I hereby, for value received, agree that all of said indebtedness

shall become instantly due, and I grant to M. T. Chipstead, his heirs and assigns, the following irrevocable power, to be exercised at his option in lieu of any proceeding he might take in law. In said event said person above named (the grantee) or his personal representative or the transferee of said notes is hereby empowered to advertise said property in the official organ of Early County, by him to be chosen, stating in said advertisement the day of sale, and, after advertising the same two consecutive insertions in said newspaper, to expose said property at public sale on the date in said advertisement named, and to sell the same to the highest and best bidder. Said sale need not be on the first Tuesday in any month, but may be at any time selected by the person to whom said indebtedness may be payable and advertised by him. The person exercising this power, or any agent or representative of his, may be purchaser at said sale. Said person above named (the grantee) or his personal representative or the transferee of said notes need not personally conduct said sale, nor be present at it, but may execute all the powers in this instrument given by an authorized agent or attorney. When said sale is made, the person making the same, or causing the same to be made, shall execute for me and in my name to the purchaser full and complete title to said property, just as I might do were I personally present; and he is further authorized to do all other and further acts I might do were I present, to make said sale complete and to pass title into the purchaser thereat, using my right and name for all of said purposes if he deem it necessary."

The advertisement of the sale was as follows:

" Georgia, Early County. Under and by virtue of a security deed executed on November 17, 1915, by Eric Gay to M. T. Chipstead, said deed being recorded in Mortgage Book EE, page 306, of the records of said county, the undersigned will, on Tuesday, December 26th, 1916, between the legal hours of sale, before the court-house door in Blakely, said county, sell to the highest bidder, for cash, the following described land." (Here follows a description of Lime Branch place.) " Said sale will be had for the purpose of securing the purchase-price of said land, as set forth in said security deed, no part of which has been paid and all of which is due and owing under the terms of said instrument, it being stipulated therein that should any part of said indebted-

ness be not paid at maturity the whole of said indebtedness shall become due; and default having been made in the payment of a part of said indebtedness, the undersigned has elected to declare the whole of said indebtedness due as provided in said instrument.

" Also at the same time and place the undersigned will sell to the highest bidder for cash the following described personal property:" (Here follows a description of the personal property to be sold.) "Said sale to be had under and by virtue of a deed to said property to secure an indebtedness, executed by E. A. Gay to the undersigned on October 30, 1916, and recorded on November 14, 1916, in Book MM, page 56, of the records of said county, said last-mentioned instrument having been executed as additional security for the indebtedness secured by the above-mentioned security deed to the land above described. This November 30, 1916.
[Signed] M. T. Chipstead."

The bill of sale from Gay to Chipstead recites that in consideration of one dollar in hand paid, and in order to further secure Chipstead on his notes due the latter for $7,000, dated November 17, 1915, due five years after date, and five notes for $560 each, bearing same date, and due one, two, three, four, and five years after date, said Gay does sell to said Chipstead seven described mules, and all corn, fodder, cottonseed, and cane then on Gay's place in Early county. It provides that if said indebtedness or any part thereof is not paid when due, then all of the same shall become due at the option of Chipstead, and he is authorized to take possession thereof and sell the same at public or private sale, the proceeds to be applied to said indebtedness. This bill of sale was dated October 30, 1916, and recorded July 31, 1917.

The defendant demurred to the petition, upon the general grounds that no cause of action was set forth therein, because there was no equity in the petition, and that under the facts therein stated petitioner was not entitled to any legal or equitable relief. The defendant demurred specially to various paragraphs of the petition.

By his answer he denied all allegations of fraud set out in the plaintiff's petition, and alleged: " When the first interest note came due, the said Gay stated to defendant that he needed the money and preferred not to pay the note at that time, but asked

defendant to permit him to execute the contract," that is, the bill of sale hereinbefore referred to, "as additional security for the payment of the indebtedness due by him. This was done expressly at the request of said Gay and for his accommodation, he already being in default at the date of the execution of said paper in the payment of said indebtedness, and, rather than then and there declare the whole debt due and proceed under the contract, defendant, for the convenience and accommodation of said Gay, agreed for him to execute said paper." After the death of Gay he approached his wife and other relatives with a view to seeing if they could carry out his contract, and ascertained that it was impossible for them to carry out the same. They did not offer to pay the note which was already in default, and apparently were not able to do so. He denied that he made any promise or agreement of any kind or character to Mrs. Gay to buy the property in for her. At the sale she, her mother, father, and her attorney were all present. The sale was advertised once a week for four weeks, it was open and fair in all respects. He would have been more than pleased had Mrs. Gay been able to secure a purchaser at the amount of the indebtedness.

Mrs. Gay having married one Alexander, an order was passed that the case proceed in the name of Lillian B. Alexander, as administratrix. The case proceeded to trial. At the close of the evidence, both parties having introduced testimony, the court directed a verdict for the defendant. The plaintiff moved for a new trial on various grounds, which was refused, and error was assigned upon the judgment,

*Hall, Grice & Bloch, C. A. Weddington,* and *B. W. Fortson,* for plaintiff.

*A. H. Gray* and *Pottle & Hofmayer,* for defendant.

HINES, J. (After stating the foregoing facts.)

1, 2. We have been asked to review and reverse the cases which bear upon the question as to the proper method of assigning error upon exceptions pendente lite; and leave was granted to counsel for plaintiff in error to have these cases reviewed. What is the proper practice in this matter? Must the assignment of error be on the exceptions pendente lite, or to the rulings excepted to therein? At any stage of the cause, either party may file his exception to any decision, sentence, or decree of the court; and if

the same is certified and allowed, it shall be entered of record in the cause; and should the case at its final determination be carried by writ of error to this court by either party, error may be assigned upon such bill of exceptions. Civil Code, § 6138. Does the language, "error may be assigned upon such bill of exceptions," mean that the appellant must assign error upon exceptions, or does it mean that an assignment of error on the rulings embraced in such exceptions can be made? . Can a party do either one or the other?

We do not find that this court has ever expressly ruled that an assignment of error on the rulings embraced in a bill of exceptions pendente lite is not good; and that the only way of assigning error on exceptions pendente lite is to assign error on the exceptions pendente lite and not on such ruling. This court, in many cases, has held that it will not decide on a bill of exceptions entered of record pendente lite unless error be assigned thereon, and both parties have opportunity to be heard in respect to such error. *Howell* v. *Howell,* 59 *Ga.* 145 (7) ; *Runnals* v. *Aycock,* 78 *Ga.* 553 (3 S. E. 657) ; *Nicholls* v. *Popwell,* 80 *Ga.* 604 (6 S. E. 21) ; *Stover* v. *Adams,* 114 *Ga.* 171 (39 S. E. 864) ; *A., & B. R. Co.* v. *Penny,* 119 *Ga.* 749 (46 S. E. 665) ; *Sumner* v. *Sumner,* 121 *Ga.* 1 (48 S. E. 727) ; *Shaw* v. *Jones,* 133 *Ga.* 446 (66 S. E. 240) ; *Smiley* v. *Smiley,* 144 *Ga.* 546 (87 S. E. 668) ; *Cotton States Electric Co.* v. *Clayton,* 147 *Ga.* 228 (93 S. E. 204) ; *U. S. Fidelity & Guaranty Co.* v. *First National Bank,* 149 *Ga.* 132 (99 S. E. 529) ; *Brewer* v. *New Eng. Mortg. Security Co.,* 149 *Ga.* 497 (101 S. E. 116).

Where exceptions pendente lite are duly certified and entered of record, when the case is brought up after final judgment error may be assigned thereupon, upon motion in this court, though no mention be made of them in the main bill of exceptions. *South Carolina R. Co.* v. *Nix,* 68 *Ga.* 572; *Hardee* v. *Griner,* 80 *Ga.* 559 (7 S. E. 102) ; *Hall County* v. *Gilmer,* 123 *Ga.* 173 (51 S. E. 307).

In none of these cases is the exact point under discussion passed upon. In all of them reference is made to the assignments of error on exceptions pendente lite; but none of them undertakes to point out the method in which this is done. In *Sumner v. Sumner,* supra, this court said, "Sumner's bill of exceptions contains

merely a recital that such an order was passed, and that exceptions pendente lite thereto were filed, but does not assign error either on the order or the exceptions pendente lite;" and thus assumes that an assignment of error could be made upon the order, the granting of which is complained of in the exceptions pendente lite. The record in the case of *South Carolina Railroad Co.* v. *Nix,* supra, shows that the assignment of error was on the decision overruling the demurrer to the petition in said case, and not upon the exceptions pendente lite complaining of the judgment over-ruling the demurrer. This court approved this assignment of error, and passed upon the question raised in the exceptions pendente lite. In our opinion an assignment of error on exceptions pendente lite, or an assignment of error on the rulings therein complained of, is sufficient.

By the act of August 15, 1921 (Ga. Laws 1921, p. 233), this question can not arise again in a case similar to this one. This act declares that "when the final bill of exceptions shows that exceptions pendente lite were properly filed in the trial court, and where the contents of such exceptions pendente lite are recited in the bill of exceptions, or a copy thereof appears in the transcript of record, an assignment of error in the final bill of exceptions, either upon the exceptions pendente lite or upon the rulings there-in excepted to, shall be held to be sufficient." This being a remedial act, not affecting vested rights (*Ross* v. *Lettice,* 134 *Ga.* 866, 68 S. E. 734, 137 Am. St. R. 281), we hold that the same is applicable to bills of exception sued out and certified be-fore its passage. By the terms of this act it is confined to cases where assignments of error are made in the final bill of exceptions; and will probably not cover cases where no mention of the ex-ceptions pendente lite is made in the final bill of exceptions, and where no assignments of error on such exceptions are made there-in, but where separate assignments of error are made in this court. For this reason we have dealt with the question of the proper practice in this matter in both classes of cases. We do not find that any decisions of this court, when properly construed, hold a contrary doctrine.

3. The plaintiff offered an amendment to her petition, in which she set up that the defendant proposed to her intestate, that, if he would give him additional security for his indebtedness,

the defendant would extend his interest note due November 17, 1916, until November 17, 1917; that in pursuance of this offer of the defendant her intestate executed and delivered to the defendant a bill of sale of certain personal property, upon the express promise and agreement of the defendant that said bill of sale was given and taken for that purpose; and that by reason of such agreement, and the acceptance by the defendant of said bill of sale, none of the indebtedness of her intestate to the defendant was due at the time he exercised the power of sale embraced in the security deed given by her intestate to said defendant upon the Lime Branch plantation, for which reason he could not exercise such power of sale. The defendant objected to the allowance of this amendment, on the grounds that it was presented too late, and that it set forth no reason in law or equity why the sale of the land described in the petition should be set aside. The court sustained the objection that the amendment was not presented in due time, and disallowed the same. In his order disallowing the amendment the judge certifies that the demurrers were set down to be heard at the time and place fixed by an order previously passed in term time. At this time and place, and after argument by both sides on the demurrers, the court inquired of counsel for the plaintiff if he had anything further to offer, and counsel responded that he had not. Thereupon the court pronounced his judgment sustaining the demurrer to so much of the petition as challenged the legality of the sale of the Lime Branch place, and directed an order to be prepared accordingly. Counsel for the plaintiff then stated that he had an amendment to offer, but the same was not prepared; and the court stated that said amendment would not be considered, because judgment had been pronounced. When the order sustaining the demurrer, as above stated, was presented for the signature of the judge, counsel for plaintiff offered this amendment, which the court declined to allow, for the reason above stated.

Did this amendment come too late? Our statute upon the subject of amendments is very broad. It provides: "All parties, whether plaintiffs or defendants, in the superior or other courts, whether at law or in equity, may at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the

pleadings to amend by." Civil Code, § 5681. A motion to amend is in time if made before any order or judgment sustaining the demurrer to a petition and dismissing the same has been entered, although the court has orally announced that the demurrer was sustained. *Lytle* v. *DeVaughn,* 81 *Ga.* 226 (2) (7 S. E. 281); *Freeman* v. *Brown,* 115 *Ga.* 23 (41 S. E. 385); *Swilley* v. *Hooker,* 126 *Ga.* 353 (55 S. E. 31). What the judge orally declares is no judgment until it has been put in writing and entered as such. *Freeman* v. *Brown,* supra. So we are of the opinion that the court erred in rejecting this amendment on the ground that it was presented too late. It was presented in time. It was offered before the judgment sustaining the demurrers had been entered by the judge.

4. It was further urged that this amendment did not set up any good reason in law or in equity why the sale complained of should be set aside. In this we can not agree with counsel for the defendant. The latter undertook to declare the principal of the debt due by reason of the fact that the interest note of his debtor which fell due November 17, 1916, had not been paid, which right he was authorized to assert under his security deed, if said note had not been paid when due. Clearly, if the debtor had extended the payment of this note, by agreement for a valuable consideration, before its maturity, for a period of one year, then the same was not due when the debtor undertook to exercise the power of sale in his security deed; and a sale under such circumstances would be null and void. *Scott* v. *Liddell,* 98 *Ga.* 24 (25 S. E. 935). This ground of attack on the sale, by the vendee in the security deed under the power of sale therein conferred upon him, was good. If he had extended the payment of the first interest note for the period of one year, then he could not in law, equity, or good conscience undertake to declare the principal of his debt due by default on the part of his debtor in the payment of this interest note.

But it is further urged by counsel for the defendant that this amendment should not be allowed, for the reason that the plaintiff attacked this bill of sale on the ground that her intestate was mentally incapable of making it at the time he signed it; and that to now assert any rights thereunder in behalf of her intestate is inconsistent with the position that this bill of sale was

void because of lack of mental capacity on the part of the maker, the plaintiff not having stricken from her petition the allegations upon the subject of the mental incapacity of her intestate. This contention of counsel is based upon the doctrine that a plaintiff can not concurrently pursue inconsistent remedies in the same action. *Couch* v. *Crane,* 142 *Ga.* 22 (82 S. E. 459). Suffice it to say that this ground of objection was not urged by the defendant to the allowance of this amendment. In the second place, the plaintiff was not required, by an appropriate demurrer or proper objection, to elect upon which position she would rely in this case. Furthermore, she was not pursuing inconsistent remedies in the same action. In the first place she undertook to attack the validity of the bill of sale on the ground of the mental incapacity of the maker. She then in effect asserted that the bill of sale, if valid, was made upon the promise of the defendant to extend the time of the payment of the interest note due November 17, 1916, and that on account of such agreement he could not undertake to declare the principal of his debt due and to exercise the power of sale to enforce its payment. The plaintiff was simply undertaking to obtain alternative relief; and we do not think that there was such inconsistency in her position as would render this amendment improper.

5. When the grantor in a security deed dies after the execution thereof, and the grantee undertakes to exercise the power of sale therein contained, the property should be advertised and sold as the property of the estate of the grantor. *Greenfield* v. *Stout,* 122 *Ga.* 303 (50 S. E. 111). This case was referred to approvingly in the case of *Baggett* v. *Edwards,* 126 *Ga.* 463, 466 (55 S. E. 250), but not expressly on this point. It is insisted that the contrary ruling was made in the case of *Sorrell* v. *British American Mortgage Co.,* 148 *Ga.* 513 (97 S. E. 441). In the last case, an administrator undertook to set aside a sale of lands, made under a power of sale contained in a security deed of the plaintiff's intestate, on the grounds, among others, that the property was advertised for sale and sold as the property of the grantor, when the latter was dead. This court held that under the state of the record it was impossible to determine the scope of the power of sale with such certainty as to pass upon the validity of the sale as a matter of law; and did not make any decision upon the question involved

in this case. In *Greenfield* v. *Stout,* supra, it was distinctly ruled, that, when the grantor in a security deed was dead, the property should be sold as the property of his estate. It is insisted by counsel for the defendant that this ruling was obiter. This position does not seem to be well taken. This court directly ruled that " as Weston, the grantor in the deed to Pullen, is dead, the land can not be sold as his property, but should be sold as the property of his estate," it appearing that the land was sold as the grantor's property. This was one of the grounds on which the sale was held to be void. We are not now prepared to hold that a sale, under such circumstances, to an innocent purchaser for value, would be void on account of such irregularity; but as between the parties to such power of sale, on the authority of *Greenfield* v. *Stout,* we hold that such sale would be void, it being the law until reversed.

6. The court sustained all the demurrers, both general and special, to the original petition, as amended, so far as it sought to set aside and declare illegal and void the advertisement, sale, and conveyance to the defendant of the tract of land embraced in the security deed from Gay to him. This ruling raises the question whether the petition, as amended, set forth a cause of action which, if proved, would entitle the plaintiff to have the sale of this place declared void and set aside. If we are right in the contention, above set forth, that under the power of sale in this security deed this land should have been advertised for sale and sold as the property of the estate of Gay when the grantee undertook to exercise this power after the death of the grantor, and that a sale not so conducted was irregular and void when the property was bought in by the vendee, and where no rights of innocent persons would be affected, then clearly the petition set forth a cause of action. Whether independently of this fact the petition set forth a good cause of action, so far as it relates to this tract of land, it is unnecessary now to decide. As we have held that the court erred in rejecting the amendment offered by the plaintiff, wherein she alleges that the payment of the interest note which fell due on November 17, 1916, had been extended for one year by the debtor giving additional security, by reason of which fact there was no default in the payment of any of the interest by Gay to the defendant, and that the power of sale could not be

exercised because there was no default, said amendment will become a part of the petition; and the petition with such amendment will clearly set forth a good cause of action.

7.  This brings us to the consideration of the grounds of special demurrer.  The court did not err in sustaining any of the grounds of special demurrer, except as will now be indicated. The court erred in sustaining the special demurrer to paragraph 12 of the petition, which alleged that the plaintiff, on December 1, 1916, had offered the defendant the sum due on the interest note which fell due on November 17, 1916.  The grounds of special demurrer are, (1) that it is not alleged how plaintiff offered the defendant said sum; (2) that the facts do not show that this offer constituted a legal tender; and (3) the note had matured, and the defendant's contractual right to declare the whole debt due had accrued.  As the defendant declined to accept payment of this interest note, it was not incumbent upon the plaintiff to show a strict legal tender.  The fact that the defendant's right to declare the whole debt due had accrued at the time of this offer does not make this paragraph demurrable on that ground, the defendant not having exercised this right, as was alleged in paragraph xii-c of the amendment to the petition.  We think that it was competent for the plaintiff, who was an heir-at-law of her husband and thus interested in his estate, to allege and prove that the defendant had expressly assured her, at the time she offered to pay him this interest note, that he had not exercised his right and that he would not exercise such right to declare the whole indebtedness due; and that she had offered to pay him the amount of this interest note, with the interest accrued thereon from its date, before the defendant had exercised his option to declare the whole debt due.  He could certainly waive this right; and if before he had exercised this harsh right the plaintiff, who was interested in the estate of her husband, made this offer, then he could not afterwards exercise the right to declare the whole debt due.  Certainly he could not do so when he had given the plaintiff his assurance that he would not do so.  For the same reason the court erred in sustaining the demurrer to paragraphs xii-d and xl-a of the plaintiff's amendment to her petition.

8.  The grounds of the motion for new trial, with the exception of the ninth ground, amount simply to allegations that the ver-

dict is contrary to the evidence and to the law. The ninth ground is without merit. We hold that the court erred in directing a verdict for the defendant, under the principles of law declared in this opinion. *Judgment reversed. All the Justices concur.*